PEOPLE v WILLIAMS

Docket No. 77-2839. Submitted June 20, 1978, at Detroit.—Decided August 21, 1978. Leave to appeal applied for.

Ricky Williams was charged with armed robbery. A jury was impaneled and sworn in the Recorder's Court for the City of Detroit to hear the case. The prosecutor was thereafter allowed to interrogate the complaining witness out of the presence of the jury. After this hearing, and over defense objections, the trial judge, Thomas L. Poindexter, J., declared a mistrial based on alleged conversations by the defendant with a juror and upon alleged threats to the complainant. The defendant was thereafter reprosecuted and convicted of armed robbery in the Recorder's Court for the City of Detroit, George W. Crockett, Jr., J. Defendant appeals claiming the reprosecution violated the double jeopardy clause. Held:

There was no manifest necessity to declare a mistrial based on the alleged threats by the defendant against the complainant or on the alleged improper contact between the defendant and a juror. Before a trial judge *sua sponte* declares a mistrial he should make explicit findings, after a hearing on the record, that no reasonable alternative exists. This was not done here. Since there was no manifest necessity to declare a mistrial and the defendant did not consent to one, jeopardy attached in the first trial. Since by the second trial the defendant was placed in jeopardy twice, in violation of his constitutional right, the conviction will not stand.

Reversed.

1. CONSTITUTIONAL LAW—TRIAL—CRIMINAL LAW—JEOPARDY—JURY— MISTRIALS—MANIFEST NECESSITY.

A defendant is placed in jeopardy once a jury is impaneled and sworn; when a defendant has been placed in jeopardy he has a

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 176.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 180, 195.
[3, 5, 6] 76 Am Jur 2d, Trial § 1083.
[4] 76 Am Jur 2d, Trial § 1084.
[7] 76 Am Jur 2d, Trial § 1089.

right to have his guilt weighed finally by that tribunal unless he consents to the trial's interruption, or a mistrial occurs because of manifest necessity.

2. CONSTITUTIONAL LAW—TRIAL—REPROSECUTIONS—CRIMINAL LAW—MISTRIALS—JURY—DOUBLE JEOPARDY—DEFENDANT'S OBJECTIONS—MANIFEST NECESSITY.

The reprosecution of a defendant following a trial judge's *sua sponte* declaration of a mistrial after a jury is sworn violates the double jeopardy clause where the defendant did not object to the mistrial and there was no manifest necessity to declare a mistrial.

3. CRIMINAL LAW—TRIAL—MISTRIALS—MANIFEST NECESSITY—CURATIVE MEASURES—JUDICIAL DISCRETION.

The doctrine of manifest necessity applies to a declaration of a mistrial standing as a command to trial judges not to foreclose a defendant's options to consider alternative curative measures before declaring the mistrial until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.

4. CRIMINAL LAW—TRIAL—MISTRIALS—JUDICIAL DISCRETION—IMPARTIAL VERDICTS—PROCEDURAL ERRORS.

A trial judge properly exercises his discretion to declare a mistrial where an impartial verdict cannot be reached, or where a verdict of conviction would have to be reversed on appeal due to an obvious procedural error in the trial.

5. CRIMINAL LAW—TRIAL—MISTRIAL—RECORD—CURATIVE MEASURES —DOUBLE JEOPARDY—ALTERNATIVES.

A trial judge, before he *sua sponte* declares a mistrial, should make explicit findings, after a hearing on the record, that no viable alternative curative measure exists; however, the double jeopardy clause will not bar a retrial, even if the examination of alternatives is not undertaken, if to do so would be futile because clearly no reasonable alternative existed.

6. APPEAL AND ERROR—TRIAL—MISTRIALS—ARMED ROBBERY—IMPROPER CONTACTS—COURT'S FINDINGS—RECORD—ALTERNATIVES —MANIFEST NECESSITY.

A trial court erred, in a trial for armed robbery, in *sua sponte* declaring a mistrial based in part on alleged improper contacts by the defendant with one of the 14 jurors and upon alleged threats to the complainant where the court did not make explicit findings, after a hearing on the record, that no reasona-

ble alternative existed to the declaration of a mistrial, where the Court of Appeals finds that such alternatives existed, and where there was no manifest necessity to declare a mistrial.

7. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—ARMED ROBBERY—MISTRIAL—JURY—DEFENDANT'S CONSENT—MANIFEST NECESSITY.

A criminal defendant was placed in jeopardy twice, in violation of his constitutional right against double jeopardy, where he was convicted of armed robbery in a second trial after the trial judge's *sua sponte* declaration of a mistrial, after the jury was sworn in his first trial, and where the defendant did not consent to the mistrial and there was no manifest necessity to declare a mistrial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy Scallen,* Assistant Prosecuting Attorney, for the people.

*Victor A. Gold,* for defendant.

Before: D. C. RILEY, P. J., and M. F. CAVANAGH and B. M. HENSICK,* JJ.

PER CURIAM. On May 6, 1976, defendant was convicted by a jury of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to a term of 10 to 15 years in prison, and appeals as of right.

The main issue raised on appeal is whether reprosecution of the defendant following the trial judge's *sua sponte* declaration of a mistrial after the jury was sworn was violative of the double jeopardy clause. We hold that it was and that the information should be dismissed. As this question is dispositive, we do not consider the other issues raised by defendant.

Defendant was first brought to trial on Septem-

* Circuit judge, sitting on the Court of Appeals by assignment.

ber 4, 1975. On the following day, immediately prior to the completion of the jury selection process, one of the members of the jury panel asked to be and was excused by the trial judge apparently because she had observed the defendant conversing at length with one of the other panel members. Another member of the panel was then qualified as juror No. 14, and the jury was impaneled and sworn by the court.

Following the swearing of the jury, the prosecutor requested and was allowed to interrogate the complaining witness out of the presence of the jury. During the hearing, the complainant positively identified the defendant as the person who had robbed him. The complainant testified that defendant had approached him three or four times out of court prior to trial, had admitted the robbery and had offered to pay back the money taken to avoid going to court. Complainant further testified that defendant had told him that his brother was in the Mafia, and that he didn't want his brother to go after the complainant.

Following this hearing, the trial court declared a mistrial based on the defendant's alleged conversations with the juror and with complainant. Defense counsel vigorously opposed the mistrial.

Once a jury is impaneled and sworn a defendant is placed in jeopardy. *United States v Jorn,* 400 US 470, 479; 91 S Ct 547, 554; 27 L Ed 2d 543, 553 (1971), *People v Tillard,* 318 Mich 619; 29 NW2d 111 (1947), *People v Gardner,* 37 Mich App 520; 195 NW2d 62 (1972). When a defendant has been placed in jeopardy, he has a right to have his guilt weighed finally by that tribunal. Unless he consents to the trial's interruption, or a mistrial occurs because of manifest necessity, the state is precluded from bringing him to trial again. *People*

*v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976).

In *People v Benton,* 402 Mich 47; 260 NW2d 77 (1977), Justice LEVIN analyzed the concept of manifest necessity as enunciated in *United States v Perez,* 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824):

"*Jorn*[1] requires that the judge consider viable alternative curative measures before *sua sponte* declaring a mistrial. As stated in *Dinitz,*[2] quoting from *Jorn,* in the absence of a motion by a defendant for a mistrial, 'the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings'.

"In *Illinois v Somerville,* 410 US 458, 464, 471; 93 S Ct 1066; 35 L Ed 2d 425 (1973), the Court ruled that there was manifest necessity where under local law a defect in the indictment was not curative by amendment and could not be waived by the defendant's failure to object: 'A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction * * * would have to be reversed on appeal due to an obvious procedural error in the trial.'

"The United States Court of Appeals for the Second Circuit reconciled *Somerville* and *Jorn* in these terms:

" '*Somerville* holds, then, that the double jeopardy clause will not bar retrial even though the examination of alternatives mandated by *Jorn* is not undertaken if to do so would be futile because clearly no reasonable alternative existed.' *United States v Grasso,* 552 F2d 46, 52, fn 2 (CA 2, 1977)." 402 Mich at 57–58 (original footnotes omitted).

---

[1] *United States v Jorn,* 400 US 470; 91 S Ct 547; 27 L Ed 2d 543 (1971).

[2] *United States v Dinitz,* 424 US 600; 96 S Ct 1075; 47 L Ed 2d 267 (1976).

In the instant case, the declaration of a mistrial did not involve an obvious procedural error or "a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties".[3] Thus, we must consider whether a "scrupulous exercise of judicial discretion" would have revealed a less drastic remedy than declaration of a mistrial. *United States v Jorn, supra,* pp 484–485.

Two grounds were cited by the trial court as necessitating a mistrial. The court indicated that the conversation with the juror, standing alone, might have caused it to hesitate, but combined with the threat against the complainant, there was a sufficient basis to declare a mistrial.

We fail to perceive how the alleged threat by defendant could have necessitated a mistrial. The declaration of a mistrial and the subsequent second trial did not alter the fact that the complainant had been threatened, if in fact he had been threatened. Furthermore, complainant testified that the alleged threat had been made a year before the trial, and that nothing had happened since that time. In addition, the witness testified at both the preliminary examination and at the hearing after the jury was sworn that he was positive of the identity of the defendant as the person who had robbed him. We conclude that there was no manifest necessity to declare a mistrial based on this ground.

The other basis for the mistrial, the alleged improper contact between defendant and a member of the jury, also does not rise to the level of manifest necessity.

Fourteen jurors were impaneled in the first

[3] *Illinois v Somerville,* 410 US 458, 471; 93 S Ct 1066; 35 L Ed 2d 425 (1973).

trial. MCL 768.18; MSA 28.1041, which provides for the impaneling of 14 jurors, states in pertinent part:

"Should any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service, he may do so and the trial shall proceed, unless the number of jurors be reduced to less than 12."

In the instant case, the trial judge should have examined the remaining 13 jurors to determine if they had been prejudiced by contact with the defendant or by the juror who had spoken with defendant. If there had been no prejudice, the trial judge could have dismissed the juror who had spoken with defendant and continued with the remaining 13 jurors. *People v Fountain,* 392 Mich 395; 221 NW2d 375 (1974), *People v Bell,* 74 Mich App 270; 253 NW2d 726 (1977).

The cases which the prosecutor cites for the proposition that disqualification of a juror is an occurrence in which there is manifest necessity for a mistrial do not involve alternate jurors. In addition, we note that defendant could have stipulated to a jury trial with less than 12 jurors after the trial had begun. *People v Rabin,* 317 Mich 654; 27 NW2d 126 (1974), *People v Jerome I Smith,* 21 Mich App 717; 176 NW2d 430 (1970).

This Court accords considerable deference to a trial judge's determination of whether there is manifest necessity justifying declaration of a mistrial. *People v Alvin Johnson, supra,* p 437. However, before a trial judge *sua sponte* declares a mistrial, he or she should make explicit findings, after a hearing on the record, that no reasonable

alternative exists. This was not done in the instant case.

We conclude that there was no manifest necessity to declare a mistrial and that because defendant did not consent to the mistrial, jeopardy attached in the first trial. Since the second trial placed defendant in jeopardy for a second time, in violation of his constitutional right, the conviction may not stand and defendant must be released.

Reversed.