PEOPLE v LITTLE

Docket No. 106965. Submitted July 12, 1989, at Lansing. Decided
September 5, 1989.

Donald R. Little, Jr., was charged in Kalamazoo Circuit Court
with assault with intent to do great bodily harm less than
murder. Following a noon recess near the close of the prosecu-
tion's proofs, the judge, John E. Fitzgerald, met with counsel in
chambers to inform them that he had become a party in a
formal grievance against the assistant prosecutor trying the
case as a result of the assistant prosecutor's actions in another
case. The judge thereupon stated that he felt he must declare a
mistrial to avoid the appearance of impropriety and impartial-
ity. Defendant opposed the declaration of a mistrial. Neverthe-
less, the court declared a mistrial and the judge disqualified
himself on the basis of what he perceived to be manifest
necessity. Prior to his second trial on the charge, defendant
brought a motion to dismiss on double jeopardy grounds. The
motion was denied, Robert Borsos, J. Defendant was tried and
found guilty of felonious assault by a jury. Defendant then pled
guilty to being an habitual offender, second offense, and was
sentenced, Donald M. Goodwillie, J. Defendant appealed by
leave granted, claiming that there was no manifest necessity
for the court to declare a mistrial after the grievance was filed
against the assistant prosecutor and before examining any
alternatives and that, therefore, defendant should have been
discharged and the charges against him dismissed for the
reason that the second trial violated his constitutional guaran-
tee against being placed twice in jeopardy.

The Court of Appeals *held:*

For constitutional purposes jeopardy had attached when a
jury was impaneled, opening statements were made or waived,
and the prosecutor called his witnesses. Once jeopardy attaches
in a case, the defendant has a right to have his guilt weighed
and decided by that jury, and unless he consents to the trial's
interruption or unless a mistrial occurs because of manifest

REFERENCES
Am Jur 2d, Criminal Law §§ 243 *et seq.*, 285 *et seq.*
See the Index to Annotations under Double Jeopardy; Mistrial.

necessity, the state is precluded from bringing him to trial again. Any doubt regarding the existence of manifest necessity should be resolved in favor of the defendant, and before a court declares a mistrial on its own initiative, it should conduct a hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists. Judge Borsos held that an exception to the requirement that a hearing be held on the record exploring viable alternatives to a mistrial existed in this case because such exploration would be futile as no reasonable alternatives existed. Another important consideration is whether the nature of the defect in the proceedings was such that if a guilty verdict had been rendered at the first trial the conviction would have had to have been reversed on appeal. The alleged defect in this case was not such that, if a guilty verdict had been rendered, the conviction would have had to have been reversed on appeal. The appearance of partiality that the judge was concerned with was against the prosecutor, not the defendant, and the defendant actively opposed the declaration of a mistrial. Furthermore, it is possible that defendant suffered prejudice by the declaration of the mistrial in that testimony of some of his witnesses was affected. The prosecutor did not request a mistrial. The judge did not state that something had occurred after trial commenced that destroyed his partiality. In fact, he stated that he was able to remain impartial. The facts in this case do not show that there was a manifest necessity for a new trial. Defendant's motion to dismiss on the basis that he was constitutionally entitled to be free from double jeopardy should have been granted.

Reversed.

1. CRIMINAL LAW — MISTRIAL — MANIFEST NECESSITY — DOUBLE JEOPARDY.

Once a jury is impaneled and sworn, the defendant is placed in jeopardy, and once a defendant has been placed in jeopardy, he has a right to have his guilt weighed and decided by that jury; unless he consents to the trial's interruption or unless a mistrial occurs because of manifest necessity, the state is precluded from bringing him to trial again.

2. CRIMINAL LAW — MISTRIAL — MANIFEST NECESSITY.

Any doubt regarding the existence of manifest necessity for the declaration of a mistrial should be resolved in favor of the defendant.

3. CRIMINAL LAW — MISTRIAL.

A court must exercise the power to declare a mistrial with great

caution and employ less drastic alternatives which would be revealed by the scrupulous exercise of judicial discretion; before a court declares a mistrial on its own initiative, it should conduct a hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists.

4. CRIMINAL LAW — MISTRIAL — MANIFEST NECESSITY — PROCEDURAL ERRORS.

A mistrial may be properly declared if a verdict of conviction would have to be reversed on appeal due to an obvious procedural error in the trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Kenneth A. Roth,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich,* for defendant.

Before: SHEPHERD, P.J., and BEASLEY and GRIBBS, JJ.

BEASLEY, J. On June 6, 1984, in a second jury trial, defendant, Donald R. Little, Jr., was convicted of felonious assault, MCL 750.82; MSA 28.277. He then pled guilty to being an habitual offender, second offense, MCL 769.10; MSA 28.1082. Defendant was sentenced to serve not less than twenty-four months nor more than six years in prison. He appeals by leave granted.

In the first trial, after a noon recess and near the close of the prosecution's proofs, the trial judge (John E. Fitzgerald, then a Kalamazoo circuit judge) met with counsel in chambers to explain that he felt that he must declare a mistrial to avoid the appearance of impropriety and impartiality. He said that during the noon recess he and other Kalamazoo circuit judges had decided to file a formal grievance against the assistant prosecutor trying the instant case as a result of the assistant

prosecutor's actions in another case. Defendant opposed the mistrial, but nevertheless the trial judge disqualified himself and declared a mistrial based on what he perceived to be manifest necessity.

Prior to the second trial, defendant brought a motion to dismiss on double jeopardy grounds, which was denied. The case then again went to trial before a jury on April 17, 18, and 19, 1984. Kalamazoo Circuit Judge Donald M. Goodwillie, who had not joined in the grievance and who had not been a Kalamazoo circuit judge at that time, presided. It is from the conviction in the second trial that defendant appeals by leave granted.

On appeal, defendant claims that there was no manifest necessity for the court to declare a mistrial after the grievance was filed against the assistant prosecutor and before examining any alternatives, and that, therefore, defendant should have been discharged and the charges against him dismissed for the reason that the second trial violated his constitutional guarantee against being placed twice in jeopardy.

Once a jury is impaneled and sworn, a defendant is placed in jeopardy,[1] and once a defendant has been placed in jeopardy, he has a right to have his guilt weighed and decided by that jury. Unless he consents to the trial's interruption or unless a mistrial occurs because of manifest necessity, the state is precluded from bringing him to trial again.[2]

---

[1] *People v Williams,* 85 Mich App 258, 261; 271 NW2d 191 (1978), lv den 403 Mich 860 (1978); *United States v Jorn,* 400 US 470, 479; 91 S Ct 547; 27 L Ed 2d 543 (1971).

[2] *Williams, supra* at 261; *People v Alvin Johnson,* 396 Mich 424, 431; 240 NW2d 729 (1976), cert den 429 US 951; 97 S Ct 370; 50 L Ed 2d 319 (1976).

In *People v Dawson*,[3] the Michigan Supreme Court spoke to the matter of double jeopardy as follows:

> The Double Jeopardy Clause does not bar all retrials. The Supreme Court of the United States has held that the charged offense may be retried where the mistrial was declared because of a hung jury. The Court has fashioned a balancing test focusing on the cause prompting the mistrial. The thrust of the Court's decisions is that the Double Jeopardy Clause does not bar retrial where the prosecutor or judge made an innocent error or where the cause prompting the mistrial was outside their control. Where the motion for mistrial is made by the prosecutor, or by the judge sua sponte, retrial will be allowed if declaration of the mistrial was "manifest[ly] necess[ary]":
>
> "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. [*United States v Perez*, 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824).]"

In *Downum v United States*,[4] the United States Supreme Court has indicated that any doubt regarding the existence of manifest necessity should be resolved in favor of the defendant. The Michigan Supreme Court has held that the trial court must exercise the power to declare a mistrial with great caution and employ less drastic alternatives which would be revealed by the "scrupulous exercise" of judicial discretion.[5] Before a court declares a mistrial on its own initiative, it should conduct a

---

[3] 431 Mich 234, 252; 427 NW2d 886 (1988).

[4] 372 US 734, 738; 83 S Ct 1033; 10 L Ed 2d 100 (1963).

[5] *People v Benton*, 402 Mich 47, 60-61; 260 NW2d 77 (1977) (opinion by LEVIN, J.).

hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists.[6]

Here, defendant contends that the trial court failed to make explicit findings as to manifest necessity and that, therefore, retrial in his case should have been barred. In the within case, on the second day of the first trial (November 9, 1983), immediately after the noon recess, the trial judge took the assistant prosecutor and defense counsel into his chambers where he announced, on the record, "that as a result of our Judges' meeting this noon, I [Judge John E. Fitzgerald] am now a party to a grievance that has been filed against the Prosecutor [Assistant Prosecutor E. Frederick Davison]."[7] After the trial judge's announcement, the following transpired:

> *Mr. Davison [Assistant Prosecutor]:* Your Honor, if that is the case, then and if the Court does not feel it can sit fairly and impartially, then as a matter of course, the Court should disqualify itself and declare a mistrial as a manifest necessity, and if that's the case, then the People can still have their day in Court and try Mr. Little at a later date.
>
> *The Court:* Well I am not sure if whether you are requesting me to disqualify myself or not.
>
> *Mr. Davison:* If the Court feels it cannot sit fairly and impartially and now I think it's established that it can't, then the Court should disqualify itself declaring that there's a manifest necessity in this case.
>
> The Jury is sworn. My only concern is that and the way the Court puts it on the Record and the

---

[6] *Id.; People v Dry Land Marina, Inc,* 175 Mich App 322, 327; 437 NW2d 391 (1989).

[7] See *People v Gauntlett,* 134 Mich App 737, 741; 352 NW2d 310 (1984), for reference to the grievance against Assistant Prosecutor E. Frederick Davison made by Judge Fitzgerald and all the other then Kalamazoo Circuit Court judges.

way the Record is establishing itself now that we still are able to try Mr. Little at a later date.

*The Court:* That's exactly why I am presenting the matter to you in the manner in which I am so it does not in any way prejudice the ultimate outcome of this particular case which you know if, if I am disqualified, I am satisfied under the Rules that creates a manifest necessity that would warrant the declaring of a mistrial which would not bar any subsequent prosecution of Mr. Little.

*Mr. Davison:* That's my concern and if that's the case, then we move . . .

*The Court:* To respond to your question, I personally have no problem in presiding at this matter. I'm aware of the appearance of things and how it may appear that perhaps I am not fair and impartial, and I'm more concerned of, from the appearance of things and how one might perceive any action taken by the Court and our continued relationship.

*Mr. Davison:* Understand.

*The Court:* Mr. Turpel? [Defense Counsel]

*Mr. Turpel:* Your Honor, we see no evidence of any partiality one way or the other. We are here; we've been here for the last day and a half. We see no reason why the Court should not sit in this matter.

We would not request, in fact, we would oppose. I understand the Court's opinion as to manifest necessity, but at this point, we would oppose, if we could, any withdrawal.

*The Court:* As I've already indicated on the Record, I feel that I have been fair and impartial in presiding during this trial, and I would hope that I could continue to be, but as a result of the action taken at our Judges' meeting, I will now become a party to an action or to a proceeding involving the Prosecutor and while I feel that I can personally maintain my objectivity, I am aware of how things might be perceived and that by our Supreme Court, in fact, our Chief Justice has admonished the Courts to be more perceptive and aware of how things might be perceived as

opposed to what in essence might be the case, and so I am concerned on how matters might be perceived henceforth.

I don't know whether that changes your position or perspective.

*Mr. Davison:* No, Your Honor, it doesn't.

*The Court:* This Court, on the basis of, on risking the chance of an appearance of not being fair and impartial although I feel I could at this moment be fair and impartial, I don't know. I have no crystal ball, and I can't say how matters might develop in the future which may make a strained relationship or maybe even tighten the possibility of perceiving the action of this Court not to be fair and impartial.

It feels that it would be appropriate for this Court to disqualify itself, and this Court having disqualified itself that creates what this Court believes to be a manifest necessity that warrants the declaration of a mistrial in this matter.

I will state for the Record, which in this Court's opinion does not preclude any subsequent prosecution of the Defendant in this action.

Now for purposes of the Record when we go in open Court as far as the Jury is concerned, I don't see any necessity of why they need to know what has transpired in terms of a grievance being filed. I will merely indicate to them that based upon the Rules, there has been a situation of manifest necessity that requires the declaring of a mistrial and that's the end of the matter. I see no reason why they need to know these whys and wherefores.

*Mr. Davison:* I agree with the Court.

*Mr. Turpel:* I agree. The Record is sufficient for any purposes of appeal or motion.

*The Court:* Is there anything further either Counsel wishes to state on the Record at this time?

*Mr. Davison:* No, Your Honor.

*The Court:* Mr. Turpel?

*Mr. Turpel:* No, Your Honor.

As previously indicated, before the second trial,

defendant brought a motion to dismiss based on double jeopardy, which was denied by another judge (Robert Borsos, then a Kalamazoo circuit judge), who held that an exception to the requirement that a hearing be held on the record exploring viable alternatives to a mistrial existed where such exploration would be futile because no reasonable alternatives existed.

An important consideration in this area is whether the nature of the defect in the proceedings was such that if a guilty verdict had been rendered at the first trial the conviction would have had to have been reversed on appeal.[8]

We do not believe the alleged defect in the first trial was such that, if a guilty verdict had been rendered, the conviction would have had to have been reversed on appeal. It was defendant's theory at trial that he stabbed the victim in self-defense after defendant's attempts to retreat failed. Defendant claimed that he stabbed the victim because he was allegedly being beaten about the head and was in fear for his own life and safety.

It must be remembered that here the appearance of partiality that the trial judge was concerned with was *against the prosecutor,* not against the defendant. The grievance was filed against the assistant prosecutor, not against defense counsel. While we recognize the desirability of avoiding the appearance of judicial partiality whenever possible, this potential for the appearance of judicial partiality must be balanced against the deprivation of defendant's "valued right to have his trial completed by a particular tribunal."[9] This valued right is more compelling where the defendant, as here, actively opposed the declaration of a mistrial. It can be argued with

[8] *Benton, supra* at 58.

[9] *Benton, supra* at 61, quoting *Jorn, supra* at 484.

some merit that defendant's case was weakened by the delay between the first trial and the second trial, thus demonstrating the possibility for prejudice which defendant may have suffered by the declaration of the mistrial.

For example, two potentially exculpatory witnesses who testified at the first trial could not be located by the prosecution in order to testify at the second trial. One testified at the first trial that he saw defendant arguing with the victim, that defendant had a dog with him, that he did not see defendant attempt to sic his dog on the victim, and that defendant was holding a knife in a relaxed manner in his hand. The other testified at the first trial that, although he had been present when the argument between defendant and the victim took place, he had not seen defendant sic a dog on the victim or have a knife in his hand. Neither of these two witnesses' testimony was introduced at the second trial, where defendant was convicted.

Defendant's two main corroborating witnesses were impeached at the second trial when the prosecutor established that they had met defendant for lunch before they testified. Such impeachment could not have occurred at the first trial because the lunch meeting took place after the first trial. At the first trial, they testified before lunch. The jury could possibly have inferred from their attempted impeachment that defendant had discussed their testimony with them before they gave it and that they were, therefore, not worthy of serious belief.

In the within case, there is no question that for constitutional purposes jeopardy had attached when a jury was impaneled, opening statements were made or waived, and the prosecutor called

his witnesses. As Justice Douglas said in *Downum:*[10]

> At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an *imperious necessity* to do so. . . . The discretion to discharge the jury before it has reached a verdict is to be exercised "only in very extraordinary and striking circumstances," . . . . For the prohibition of the Double Jeopardy Clause is "not against being twice punished, but against being twice put in jeopardy." [Emphasis added.]

The Michigan cases are of similar tenor.[11] For example, in *People v Dry Land Marina,*[12] we said:

> In accord with these authorities, the Michigan Supreme Court has also held that the trial court must exercise its power to declare a mistrial with great caution and employ less drastic alternatives which would be revealed by the scrupulous exercise of judicial discretion. *People v Benton,* 402 Mich 47, 60-61; 260 NW2d 77 (1977). Before a court declares a mistrial on its own initiative, it should conduct a hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists. *Id.,* p 61.
>
> Based on the foregoing, it may be concluded that the policy of protecting defendant's right to have its case decided by the jury as chosen is protected by avoiding a mistrial if reasonable alternatives exist.

Here, defendant not only did not agree to a mistrial, but opposed it. The assistant prosecutor

---

[10] 372 US 736.

[11] See *Benton, supra; Dawson, supra.*

[12] *Supra* at 327.

against whom the grievance was filed took an ambivalent position. We would not characterize his comments as constituting a request for a mistrial. If the trial judge had said that something had occurred after trial commenced that destroyed his impartiality, we believe that there probably would have been *manifest necessity* for a mistrial.[13] But, that did not happen here. The trial judge said he was able to remain impartial in the ongoing trial. He entertained the tenuous concern that there was a possible appearance of partiality against the prosecutor. Weighed against defendant's desire to receive a verdict from the sitting jury, we believe the scales favor defendant. Defendant's motion to dismiss on the basis that he was constitutionally entitled to be free from double jeopardy should have been granted.

Reversed.

---

[13] See *Benton, supra* at 64, n 26.