**STATE of Iowa, Appellant,**

v.

**Michael Charles DIXON, Appellee.**

**No. 94–1762.**

Supreme Court of Iowa.

July 19, 1995.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., John Sarcone, County Atty., and Odell G. McGhee, Asst. County Atty., for appellant.

Patrick H. Payton and Ronald G. Cable of Patrick H. Payton & Assoc., P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

Criminal defendant Michael C. Dixon challenged as violative of double jeopardy his retrial following the termination of his initial trial. The second trial court granted Dixon's motion to dismiss on the ground that the trial judge presiding over the first trial acted without manifest necessity in sua sponte declaring a mistrial after the judge personally volunteered comments during the trial. On the State's appeal of the dismissal, we affirm.

I. Factual and Procedural Background

On March 23, 1994, a car allegedly being operated by Dixon struck and killed a young child named Binh–Mo Thi Le. The State charged Dixon with involuntary manslaughter, in violation of Iowa Code section 707.5 (1993), and failure to give aid and informa-

tion, in violation of Iowa Code sections 321.261(3) and .263.

The trial court, Judge Rodney J. Ryan presiding, began a jury trial on June 27, 1994. During cross-examination of the State's third witness, Andre Jones, the defense counsel attempted to get Jones to describe the scene of the accident with the help of a diagram. The trial judge interjected his own remarks regarding the accuracy of the diagram. The following colloquy occurred:

Q: Where did the little girl get hit if she got hit on Drake Park?

THE COURT: Well, you're doing a great job of mixing up a street with an area.

A. I don't know—

THE COURT: Excuse me. Can we identify for the jury what we're talking about in regard to a street and an area? We're calling everything Drake Park, and everybody is getting mixed up.

MR. MCGHEE: Judge, I think the witness got confused, and I think Mr. Payton—

THE COURT: Just identify—We're calling two different areas the same thing, and that's getting confusing to everybody. There is not—There is a Drake Park Street, and there is a Drake Park where there's a basketball court and other things. Let's separate those so we know what it is, and maybe the witnesses can distinguish between those two areas.

THE WITNESS: On the map, though— The map from it is different, because where I was standing—Well, actually everything would be down here instead of up here. See what I'm saying? This is a perfect format of the map of everything in the area, but it would be down here because the street is right here.

THE COURT: Mr. Jones, read the diagram closely. And I tend to agree with you that anybody that's familiar with it—I don't think the tennis courts are that close to the street, but I know that might be what's confusing the witness.

MR. PAYTON: Your honor, I'm going to object. I'm going to object to you testifying to how close the tennis courts are in

this courtroom. You're not a witness in this courtroom.

THE COURT: I'm telling the jury—

MR. PAYTON: I want to make record outside the presence of the jury, Your Honor.

THE COURT: I'm going to call a mistrial. That's it. Thank you, folks. You are now excused.

The trial judge then immediately left the courtroom. The State's attorney and Dixon's counsel then secured a date for retrial of the matter. Dixon's counsel at no time objected to the declaration of the mistrial. The trial judge later issued a written statement in which he indicated he had interpreted Dixon's counsel's objection to his comments as a motion for a mistrial and had granted the request.

Dixon subsequently filed a motion to dismiss in which he asserted that, under the circumstances, the trial judge's sua sponte declaration of a mistrial constituted an abuse of discretion and therefore retrial of the matter would improperly subject Dixon to double jeopardy. Following a hearing before Judge Joel D. Novak, the court granted Dixon's motion to dismiss and dismissed the charges with prejudice.

## II. Scope of Review

■ We review for errors of law a trial court's grant of a motion to dismiss criminal charges on the ground that double jeopardy forbids reprosecution of the defendant. Iowa R.App.P. 4; *see State v. White*, 209 N.W.2d 15, 16 (Iowa 1973); *cf. State v. Stanley*, 351 N.W.2d 539, 540 (Iowa Ct.App.1984).

## III. Manifest Necessity

■ When a criminal defendant challenges as violative of double jeopardy his or her retrial following a trial court's declaration of a mistrial, whether the retrial violates double jeopardy principles turns on the propriety of the court's declaration of a mistrial. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend.

V; *see United States v. DiFrancesco,* 449 U.S. 117, 121 n. 3, 101 S.Ct. 426, 429 n. 3, 66 L.Ed.2d 328, 335 n. 3 (1980); *State v. Franzen,* 495 N.W.2d 714, 715 (Iowa 1993). The relevant provision of the Iowa Constitution is not as broad: "[n]o person shall after acquittal, be tried for the same offense." Iowa Const. art. I, § 12; *see Franzen,* 495 N.W.2d at 715. However, the Fourteenth Amendment of the federal constitution makes the federal Double Jeopardy Clause applicable to Iowa criminal proceedings. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969); *Franzen,* 495 N.W.2d at 715. The same constitutional standards govern our analysis of potential jeopardy attachment circumstances as control the federal courts. *Franzen,* 495 N.W.2d at 716.

■ A criminal defendant is placed in jeopardy once he or she is put to trial before the trier of fact, whether the trier is a judge or jury. *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971). In the case at bar, Dixon was placed in jeopardy when the jury was sworn. *See State v. Watts,* 244 N.W.2d 586, 588 (Iowa 1986). The federal Double Jeopardy Clause is based on the policy that

the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957); *see DiFrancesco,* 449 U.S. at 127–28, 101 S.Ct. at 432, 66 L.Ed.2d at 349; *Jorn,* 400 U.S. at 479, 91 S.Ct. at 554, 27 L.Ed.2d at 553; *White,* 209 N.W.2d at 16. "As a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717, 727–28 (1978). However, the United States Supreme Court has on a number of occasions stated that in some instances, the "public's interest in fair trials designed to

end in just judgments" must outweigh a criminal defendant's "valued right to have his trial completed by a particular tribunal." *E.g., Jorn,* 400 U.S. at 480, 91 S.Ct. at 554–55, 27 L.Ed.2d at 554; *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 836, 93 L.Ed. 974, 978 (1949); *see also White,* 209 N.W.2d at 16.

■ At its most basic, the Double Jeopardy Clause forbids: (1) retrial following an acquittal, *Arizona,* 434 U.S. at 503, 98 S.Ct. at 829, 54 L.Ed.2d at 726; *Crawford v. Fenton,* 646 F.2d 810, 816 (3d Cir.1981); (2) a second prosecution for the same offense after conviction, *DiFrancesco,* 449 U.S. at 129, 101 S.Ct. at 433, 66 L.Ed.2d at 340; and (3) multiple punishments for the same offense. *Id.* The double jeopardy principle does not forbid reprosecution of a criminal defendant after he or she has successfully appealed a conviction. *White,* 209 N.W.2d at 17. American courts have long utilized the following standard when measuring the double jeopardy implications of a court's declaration of a mistrial where the defendant has been neither acquitted nor convicted:

[I]n all cases of this nature, the law has invested courts of justice with authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a *sound discretion* on the subject; and it is impossible to define all circumstances which would render it proper to interfere. *To be sure, the power ought to be used with great caution, under urgent circumstances, and for very plain and obvious causes.*

*United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824) (emphasis added); *see Crawford,* 646 F.2d at 816; *White,* 209 N.W.2d at 16.

■ A trial judge has considerable discretion to declare a mistrial after a procedural error has occurred during a trial and we will not reverse the court's decision absent a finding of abuse of discretion. *Watts,* 244 N.W.2d at 588; *see State v. Givens,* 161 Ariz. 278, 778 P.2d 643, 644 (Ct.App.1989).

A trial judge properly exercises his [or her] discretion to declare a mistrial if an

impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve the ends of public justice to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.

*Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425, 431 (1973); *Schaffer v. State,* 649 S.W.2d 637, 639 (Tex. Crim.App.1983).

 When a trial judge determines in his or her sound discretion that manifest necessity or the ends of public justice so require, he or she may properly declare a mistrial without the defendant's consent and even over the defendant's objection. *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961); *Givens,* 778 P.2d at 646. Where the trial court declares a mistrial without the consent of the defendant, and there is an absence of manifest necessity for the mistrial, double jeopardy will bar a retrial. *State v. Mayo,* 62 Haw. 108, 612 P.2d 107, 110 (1980); *State v. Pulawa,* 58 Haw. 377, 569 P.2d 900, 903 (1977). We resolve any doubt "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." *Downum v. United States,* 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100, 104 (1963); *People v. Little,* 180 Mich.App. 19, 446 N.W.2d 566, 568 (1989). "Manifest necessity" does not mean that an "absolute necessity" must exist for the declaration of a mistrial. *Givens,* 778 P.2d at 646. Rather, we recognize that degrees of necessity exist, and a high degree of necessity must support a trial judge's sua sponte declaration of a mistrial in order for retrial to not be violative of the double jeopardy principle. *Arizona,* 434 U.S. at 506, 98 S.Ct. at 831, 54 L.Ed.2d at 728–29; *Givens,* 778 P.2d at 646.

 At one extreme of the spectrum, courts refuse to sanction trial courts' grants of mistrials when the prosecution deliberately sought a mistrial in order to strengthen the State's case. *Arizona,* 434 U.S. at 507, 98 S.Ct. at 831, 54 L.Ed.2d at 729; *Crawford,* 646 F.2d at 816; *State v. Love,* 300 N.W.2d 137, 138 (Iowa 1981); *Commonwealth v. Anderson,* 294 Pa.Super. 1, 439 A.2d 720, 723 (1981). Therefore, courts apply the strictest scrutiny when the basis for the mistrial is the unavailability of critical prosecution evidence or when it appears the prosecutor may be using the superior resources of the State to harass the defendant or achieve a tactical advantage. *Arizona,* 434 U.S. at 508, 98 S.Ct. at 832, 54 L.Ed.2d at 730. At the other extreme of the necessity spectrum and appellate court deference is the mistrial premised on the existence of a "hung jury." *Id.* at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730. Long considered the classic basis for a proper mistrial, courts have consistently found manifest necessity for a mistrial declaration where the trial judge determined the jury was unable to agree on a verdict—even where multiple trials have resulted in hung juries. *Id.; White,* 209 N.W.2d at 17.

 When a defendant consents to a declaration of mistrial, for example by moving for a mistrial, even though judicial or prosecutorial error necessitated the consent, the acquiescence normally removes the barrier to retrial. *Pulawa,* 569 P.2d 900, 903. Where the defendant consents to a mistrial, retrial is not barred if the mistrial was caused by innocent errors on the part of the prosecution or the judge or if the errors prompting mistrial were outside the control of the prosecution or judge. *Little,* 446 N.W.2d at 567.

 In the case at bar, we do not believe the trial judge reasonably could have perceived the defense counsel's comments as a motion for mistrial, nor do we find that any action on the part of the defense constituted consent to the mistrial. *See Little,* 446 N.W.2d at 570. Where a defendant has not moved for nor consented to a mistrial, manifest necessity

> stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of

public justice would not be served by a continuation of the proceedings. *Jorn,* 400 U.S. at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556–57. If a trial judge acts irrationally or irresponsibly in declaring a mistrial, the judge has abused his or her discretion and double jeopardy will bar retrial of the matter. *Arizona,* 434 U.S. at 514, 98 S.Ct. at 835, 54 L.Ed.2d at 734.

The State contends that manifest necessity existed for the trial judge's sua sponte declaration of a mistrial because the judge's comments created the potential for jury bias and an appearance of partiality on the part of the judge. The judge's comments were so damaging, the State argues, that his immediate declaration of a mistrial without an inquiry into possible alternatives or implications was required to serve the ends of public justice. We disagree.

 The role of a trial judge in a criminal trial is more than a "mere moderator" of the trial. *United States v. Scott,* 26 F.3d 1458, 1464 (8th Cir.1994). The trial judge may ask questions of witnesses in an attempt to clarify testimony and to elicit facts necessary to a clear presentation of the issues. *Id.* However, the court must "preserve an attitude of impartiality and [guard] against giving the jury an impression that the court believes the defendant is guilty." *Id.* (quotation omitted). When a criminal defendant asserts that a trial judge's comments prevented a fair trial, we will engage in a balancing of the potential prejudice caused by the trial judge's comments and the overall fairness of the trial. *Id.* Where the judge appears to have lost his or her appearance of neutrality, or appears to have accentuated and emphasized the prosecution's position, we will find the balance tipped adversely against the fairness of the trial. *See id.*

 The record in the case at bar does not demonstrate that the trial judge's comments accentuated or emphasized the prosecution's case, nor could the jury reasonably have viewed the judge's comments as suggesting the judge believed the defendant was guilty. If any partiality could reasonably have been inferred from the judge's criticism of the prosecution's diagram, it would most likely have been *against* the prosecution rather than in favor of the prosecution. *See Little,* 446 N.W.2d at 569. We do not find the trial judge's comments so infected the trial with error as to make reversal on appeal a certainty. By failing to properly weigh the prejudicial potential of the comments and by failing to properly consider alternative actions, the trial judge acted irrationally and irresponsibly in sua sponte declaring a mistrial. *See id.* at 570.

*United States v. Jorn* controls our decision in this case. *Jorn* involved the prosecution of a defendant for willfully assisting in the preparation of fraudulent income tax returns. *Jorn,* 400 U.S. at 472, 91 S.Ct. at 550, 27 L.Ed.2d at 549. The Government sought to call as witnesses five individuals whom the defendant had allegedly aided in preparing the returns in question. *Id.* at 472, 91 S.Ct. at 551, 27 L.Ed.2d at 549. After the first witness was called, but before direct examination began, the defense counsel suggested the witnesses be advised of their constitutional rights. *Id.* The trial judge agreed and proceeded to carefully explain the witness' right to not say anything that might be used against the witness in a subsequent case, and the witness' right to be represented by an attorney. *Id.* at 473, 91 S.Ct. at 551, 27 L.Ed.2d at 549.

Although the witness thereafter expressed a willingness to testify and indicated he had been advised of his rights when the Internal Revenue Service initially contacted him, the trial judge refused to believe the witness received any warning from the IRS and expressed the view that any warning the witnesses had received was probably inadequate. *Id.* at 473, 91 S.Ct. at 551, 27 L.Ed.2d at 549–50. The trial judge then discharged the jury and called all of the witnesses into court and informed them of the dangers of unwittingly making damaging admissions. *Id.* at 473, 91 S.Ct. at 551, 27 L.Ed.2d at 550. Thereafter, the trial judge declared a mistrial so that the witnesses could consult attorneys. *Id.* In holding that the Double Jeopardy Clause barred retrial of the defendant, the court noted, in language strikingly applicable to the case before us:

It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial.

*Jorn,* 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558.

 The State seems to argue early in its brief that our overriding test to determine the propriety of mistrial is to weigh the interests of society in just resolution of criminal cases against a criminal defendant's valued right to have his trial completed by a particular tribunal. The implicit assertion is that even if a trial court abused its discretion in sua sponte declaring a mistrial, if minimal prejudice was caused to the criminal defendant and society has a strong interest in trying the defendant, retrial will not violate double jeopardy. However, this is not the law. *Jorn* stands for the proposition that such a balancing does not override a trial judge's sua sponte declaration of mistrial when there was no manifest necessity for the declaration. *Id.* at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558.

> For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to have his trial completed by a particular tribunal."

*Id.* at 484, 91 S.Ct. at 557, 27 L.Ed.2d at 556.

We are unable to find any manifest necessity for Judge Ryan's sua sponte declaration of a mistrial in this case and we are additionally unable to find that the ends of public justice were served by the mistrial declaration. We therefore hold that Judge Ryan abused his discretion in declaring a mistrial and the Double Jeopardy Clause of the United States Constitution bars retrial of this matter. We affirm Judge Novak's grant of Dixon's motion to dismiss and the court's dismissal of the trial information against Dixon with prejudice.

**AFFIRMED.**