**Reginald Neal FAY, Plaintiff-Appellant,**

v.

**O.L. McCOTTER, Director, Texas Department of Corrections, Defendant-Appellee.**

**No. 83–2762.**

United States Court of Appeals, Fifth Circuit.

July 15, 1985.

Richard Prinz, Houston, Tex. (court-appointed), for plaintiff-appellant.

Jim Mattox, Atty. Gen. of Texas, Paula C. Offenhauser, William C. Zapalac, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before GEE, TATE, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Reginald Neal Fay appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition. He asserts that the judge at his first trial too quickly granted a mistrial based on jury deadlock, and that his second trial and conviction therefore violated his Fifth Amendment right not to be twice put in jeopardy. Because, as a federal habeas reviewing court, we accord great deference to a state trial judge's conclusion that a jury has reached a permanent impasse, we affirm the denial of the writ.

## I

Fay was indicted for burglary of the home of Carrie Denson. At Fay's first trial, Denson testified that early one morning, she had been awakened by noises coming from the first floor of her home. When she opened her bedroom door to investigate, she was confronted by a man brandishing her butcher knife. Denson screamed, and the intruder told her that he had come to kill a man named Johnny, not her. He then fled. The next day, Denson saw Fay at a lounge and identified him as the intruder. After Fay was later apprehended, Denson again identified him at a lineup and in court. A police fingerprint expert testified that twelve fingerprints left on the inside and outside of a broken window in Denson's kitchen were Fay's. The only defense witnesses were Fay and his father, who testified that Fay had been at home at the time of the offense. The prosecution and defense testimony together took just under three hours to present.

The case was submitted to the jury at about 11:00 a.m. At about 3:00 p.m., after some 2¾ hours of deliberation and a lunch break, the jurors informed the judge that they could not reach a verdict. The jury was called back into the courtroom, and the following colloquy ensued between the judge, jury foreperson Johnson, and Fay's attorneys Chambers and Stephanow:

THE COURT: Would you bring the jury in, please?

(Whereupon, the jury enters the courtroom.)

THE COURT: Please be seated. Miss Johnson, may I ask, you say that you are unable to reach a verdict; is that correct?

MISS JOHNSON: That is correct, Your Honor.

THE COURT: Without asking how the jury is standing at this time, could you tell me how the jury is divided, what numbers they're divided on.

MISS JOHNSON: Three-quarters to a quarter.

THE COURT: All right. Thank you. Anything else at this time?

MR. CHAMBERS: Your Honor, may we have the jury retired? I think we

need to consider some of the law in this case.

THE COURT: Would you take the jury in the jury deliberation room?

(Whereupon, the jury is retired from the courtroom.)

THE COURT: Do you want to make some request for the record?

MR. STEPHANOW: We thought we might talk to the prosecutor.

MR. CHAMBERS: May we have a couple minutes to talk to counsel?

Judge, at this point we would oppose. We are not requesting a mistrial at this time. I don't think the jury has been out a sufficient length of time to adequately consider the evidence in the case.

THE COURT: Do you have anything else you would like to say before the Court decides what it would do?

(No response.)

THE COURT: The Court's going to declare a mistrial in this matter. If you will bring the jury back in.

MR. CHAMBERS: Note our exception to the record.

The judge then filed a written form order stating: "It is the opinion of the Court that [the jurors] have been kept together for such a time as to render it altogether improbable that they can agree upon a verdict."

At Fay's second trial, virtually the same evidence was presented as at the first trial. The second jury convicted Fay and sentenced him to 15 years. After exhausting his state remedies, Fay filed this habeas petition challenging the mistrial grant and subsequent retrial.

## II

■ The Double Jeopardy Clause of the Fifth Amendment prohibits the retrial of a defendant after a mistrial declared over his objection unless there is "manifest necessity" for the mistrial. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). The "classic" example of mani-

fest necessity "is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict...." *Washington*, 434 U.S. at 509, 98 S.Ct. at 832.

■ Because the trial judge "is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination" of whether a deadlock exists, the judge's findings must be "accorded great deference by a reviewing court." *Washington*, 434 U.S. at 510 & n. 28, 98 S.Ct. at 832 & n. 28. This deference to what is essentially a trial court finding of fact—that the jury is at a point where further deliberations will do no good—is independently mandated in this habeas action by 28 U.S.C. § 2254(d), which instructs us to afford a presumption of correctness to a state court's factual findings. *See Wainwright v. Witt*, — U.S. ——, 105 S.Ct. 844, 854–55, 83 L.Ed.2d 841 (1985) (trial judge's determination that a prospective juror in a capital case will not be able to apply the law is entitled to § 2254(d) deference).

■ The trial court's finding of deadlock was fairly supported by the record. Although the jury deliberated for only three hours, the facts of the case were few and uncomplicated, and the issue clear: whether to believe the prosecution's eyewitness and fingerprint evidence or Fay's alibi. The jury, not the court, initiated consideration of the issue of deadlock. *Cf. United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1043 (3d Cir.1975). The trial judge, familiar with the jury and the atmosphere of the trial in a way that we can never be, could reasonably have concluded from these circumstances that further jury deliberations would have been fruitless.

■ Fay raises three specific challenges to the trial judge's actions. First, citing *United States v. Gordy*, 526 F.2d 631 (5th Cir.1976), he complains that the judge should have inquired further of each juror in an effort to ascertain whether a true deadlock existed. In reversing the conviction in *Gordy* on double jeopardy grounds,

we did intimate that such an inquiry would have helped show whether the jury's inability to agree was permanent. *Id.* at 636–37. We stressed, however, that review of mistrial decisions "is incompatible with a mechanical application of rules and exceptions." *Id.* at 635. In *Gordy,* a case involving the difficult legal issue of constructive possession, and with circumstances indicating that the jury may have been aware of the judge's desire to hurry the proceedings, a more detailed inquiry may well have been necessary. Were we to nevertheless mandate a particularized juror inquiry here, we would be laying down the sort of *per se* rule that *Gordy* rejected. We remind that *Gordy* was a direct appeal unlike this habeas review of a state conviction. Given the 2254(d) presumption, we are unable to conclude that the state trial judge erred in deciding that the foreperson's statement that the jury was unable to agree was more than an expression of a present inability to agree.

Second, Fay contends that the trial judge should have filed specific findings of fact explaining his decision. The state responds that the judge made such a finding in his written order. We are hesitant to accord great weight to that written finding. The wording is part of a preprinted "hung jury" form on which the judge merely filled in blanks representing dates and the like, but that is not its principal vice because such forms can be useful. The difficulty is that the next line of the form recites that the defendant consented to the mistrial grant, which is concededly not true.

The force of this particular finding is of no moment, though. The trial judge's oral grant of a mistrial, after being told by the foreperson that the jury was unable to reach a verdict, necessarily encompasses a factual finding of deadlock. As the Supreme Court said in *Witt,* in the context of juror strikes for cause:

> We decline to require the judge to write out in a separate memorandum his specific findings.... A trial judge's job is difficult enough without senseless makework. Nor do we think under the circumstances that the judge was required to announce for the record his conclusion

... or his reasoning. The finding is evident from the record.

105 S.Ct. at 855, *citing Marshall v. Lonberger,* 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). *See also Arizona v. Washington,* 434 U.S. at 517, 98 S.Ct. at 836.

■ Finally, Fay complains that the trial court did not consider possible alternatives to the grant of a mistrial, such as giving an Allen or "dynamite" charge. We rejected this argument in *Cherry v. Director, State Board of Corrections,* 635 F.2d 414, 418–19 (5th Cir.1981) (en banc): "[A] trial judge does not err for failing to consider or adopt a specific alternative for a mistrial.... A trial judge has acted within his sound discretion in rejecting possible alternatives and granting a mistrial, if reasonable judges could differ about the proper disposition...." In light of the dangers of a coercive verdict presented when a mistrial is *not* granted after a deadlock, *see Washington,* 434 U.S. at 509–10, 98 S.Ct. at 832–33, we will thus defer to the trial judge's chosen course if the judge's finding of deadlock is fairly supported by the record. We believe that it is here. The court below therefore correctly denied Fay's double jeopardy claim.

AFFIRMED.