**STATE of Iowa, Plaintiff–Appellee,**

v.

**Cecil Kevin CONNELLY, Defendant–Appellant.**

**No. 95–208.**

Court of Appeals of Iowa.

April 23, 1996.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Matthew Shupe, Assistant County Attorney, for appellee.

Before SACKETT, P.J., and HABHAB and CADY, JJ.

SACKETT, Presiding Judge.

Defendant-appellant Cecil Kevin Connelly appeals from his conviction in a second trial of second-degree sexual abuse. He claims double jeopardy barred his retrial and his trial counsel was not effective. We affirm the denial of defendant's motion to dismiss and preserve his claim of ineffective assistance for postconviction proceedings.

The first time defendant was tried on these same charges, the jury began deliberations at approximately 1:30 p.m. on October 12, 1994. The jury was discharged for the day between 4:30 and 4:45 p.m. The jury reconvened deliberations the next morning at 8:30 a.m. About one-half hour later, the jury sent the judge two questions:

Number 1: What is reasonable doubt in layman's terms?

Number 2: Are we correct in assuming that our job in determining a verdict we are supposed to first, one, look at the evidence and if we aren't in agreement at that point then, two, consider testimony, character, common sense and experience?

The judge, in the presence of attorneys for defendant and the State and the defendant, said he would respond by referring the ju-

rors to the specific instructions they had been given. Defendant's attorney agreed to the judge's response.

Around 10:30 a.m., the jury told the court attendant it was deadlocked. The judge, with attorneys for defendant and the State and the defendant, asked the foreperson if further deliberations would be fruitless. The foreperson responded yes. The judge asked the jurors if they all held that belief. The record shows the jury was polled and all replied in the affirmative. The court, without further inquiry, discharged the jury and announced he would contact the court administrator for a retrial date.

Prior to retrial, defendant filed a motion to dismiss arguing double jeopardy barred his being tried again on the same charge. A hearing was held and the motion was denied.

■ Defendant, on appeal, contends the trial judge abused his discretion when he overruled his motion to dismiss. We review for an abuse of discretion. *See State v. Nelson,* 234 N.W.2d 368, 375 (Iowa 1975).

Defendant contends the judge at his first trial acted prematurely in dismissing the jury in that the jury deliberated for less than five hours and in not advising counsel of his intention and providing them with an opportunity to respond.

■ A trial court has discretion to discharge jurors if they have deliberated and it appears they cannot agree, *see* Iowa R.Crim. P. 18(6)(a), though the court's discretion is limited by constitutional protections against double jeopardy. *Nelson,* 234 N.W.2d at 374. Therefore, when a trial court declares a mistrial, whether the retrial violates double jeopardy principles turns on the propriety of the court's declaration of a mistrial. *State v. Dixon,* 534 N.W.2d 435, 438 (Iowa 1995).

■ A retrial after a jury in a prior trial has been unable to agree generally does not violate the Double Jeopardy Clause. *See Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085, 82 L.Ed.2d 242, 250 (1984); *see also Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982); *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d

717, 730 (1978); *see also Nelson,* 234 N.W.2d at 375, and *State v. White,* 209 N.W.2d 15, 17 (Iowa 1973).

■ Defendant claims his case is distinguishable because the trial judge declared a mistrial on his own motion before advising defendant and his attorney and the attorney for the State and before affording them an opportunity to object. We agree with defendant the trial judge should not have declared a mistrial without allowing defendant an opportunity to object or offer any input. *See United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 558 (1971); *Dixon,* 534 N.W.2d at 441–42. However, this fact alone is not dispositive. *See United States v. Sanford,* 429 U.S. 14, 15, 97 S.Ct. 20, 21, 50 L.Ed.2d 17, 19 (1976), and *Logan v. United States,* 144 U.S. 263, 297–98, 12 S.Ct. 617, 628, 36 L.Ed. 429, 441 (1892).

■ Defendant argues the court acted prematurely in discharging the jury and in not considering alternatives to a mistrial. A trial judge is allowed to exercise broad discretion in deciding whether or not to allow a jury to deliberate longer. *Washington,* 434 U.S. at 509–10, 98 S.Ct. at 832, 54 L.Ed.2d at 730–31. If the jury is discharged when further deliberations may produce a fair verdict, the defendant is deprived of his right to have his trial completed by a particular tribunal. *Id.* Yet, the failure to discharge a jury unable to reach a verdict after protracted deliberations presents a risk a verdict may be the result from pressures inherent in the situation rather than the considered judgment of all the jurors. *Id.*

The jury in this case deliberated five hours and sent two questions to the judge pertaining to the definition of reasonable doubt and how to consider evidence, character, common sense, and experience in reaching a verdict. Shortly after being directed by the court to refer back to specific jury instructions, the jury, on its own initiative, informed the court attendant it would not be able to reach a verdict.

■ The trial judge should have solicited the input of trial counsel and defendant. Trial counsel and defendant, though present, made no effort to challenge the trial court's

actions. We cannot say the trial judge abused his discretion in declaring a mistrial. He was in the best position to assess the nature of the case and the conclusiveness of the jury's deadlock. The hung jury constituted a "manifest necessity" for a mistrial and defendant's claim the double jeopardy provision of the constitution barred a retrial is without merit.

■ Defendant claims his trial counsel was not effective because he placed defendant's character in evidence and opened the door to the admission of rebuttal testimony concerning prior incidents of child abuse by defendant. Generally, claims of ineffective assistance of counsel are preserved for postconviction proceedings. *See State v. Mulder,* 313 N.W.2d 885, 890 (Iowa 1981), *cert. denied* 459 U.S. 841, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982); *State v. Nebinger,* 412 N.W.2d 180, 191–92 (Iowa App.1987). Preserving the matter for postconviction relief allows the facts to be developed and gives the allegedly ineffective attorney an opportunity to explain his or her conduct, strategies, and tactical decisions. *See State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978).

■ Trial counsel may have had a strategic reason for introducing testimony of defendant's character and qualities as a parent. Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance. *Fryer v. State,* 325 N.W.2d 400, 413 (Iowa 1982). We conclude the record is not sufficient to address this claim and reserve it for postconviction proceedings.

**AFFIRMED.**

CADY, J., concurs.

HABHAB, J., specially concurs.

HABHAB, Judge, specially concurring.

I concur in all respects with the majority opinion, but would like to add the comments which follow.

The Double Jeopardy Clause, in its most basic form, is intended to protect against: (1) retrial following an acquittal; (2) a second prosecution for the same offense after a conviction; and (3) multiple punishments for the same offense. *State v. Dixon,* 534 N.W.2d 435, 439 (Iowa 1995). However, a reprosecution following a hung jury does not violate the Double Jeopardy Clause. *Richardson v. United States,* 468 U.S. 317, 324, 104 S.Ct. 3081, 3085–86, 82 L.Ed.2d 242, 250 (1984).

A mistrial may be declared without the defendant's consent and even over the defendant's objection when the "trial judge determines in his or her own discretion that manifest necessity or the ends of public justice so require." *Dixon,* 534 N.W.2d at 440 (citing *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961)). When the defendant does not consent to a mistrial, the defendant may be retried as long as there was "manifest necessity" for the termination of the first trial. *United States v. Dinitz,* 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 274 (1976). The district court has considerable discretion to declare a mistrial, and we will not reverse the court's decision absent a finding of abuse of discretion. *State v. Watts,* 244 N.W.2d 586, 588 (Iowa 1976).

"Manifest necessity" does not mean an absolute necessity must exist for a mistrial and our supreme court has recognized there are varying degrees of necessity. *Dixon,* 534 N.W.2d at 440 (citing *Arizona v. Washington,* 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717, 728–29 (1978)). In defining the two extremes of the spectrum of degrees, our supreme court stated:

At one extreme of the spectrum, courts refuse to sanction trial courts' grants of mistrials when the prosecution deliberately sought a mistrial in order to strengthen the State's case. Therefore, courts apply the strictest scrutiny when the basis for the mistrial is the unavailability of critical prosecution evidence or when it appears the prosecutor may be using the superior resources of the State to harass the defendant or achieve a tactical advantage. At the other extreme of the necessity spectrum and appellate court deference is the mistrial premised on the existence of a "hung jury." Long considered the classic basis for a proper mistrial, courts have consistently found manifest necessity for a

mistrial declaration where the trial judge determined the jury was unable to agree on a verdict—even where multiple trials have resulted in hung juries.

*Dixon,* 534 N.W.2d at 440 (citations omitted). In commenting on this last degree of necessity regarding a mistrial due to a "hung jury," the United States Supreme Court has stated:

[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws.

Moreover, in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal," but if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.

*Washington,* 434 U.S. at 509–10, 98 S.Ct. at 832, 54 L.Ed.2d at 730–31 (citations omitted).

Appellate courts have frequently set out a number of considerations for a trial judge to make in determining whether a mistrial should be declared due to a deadlocked jury. One such court stated a court should consider: (1) the jury's collective opinion that it cannot agree, (2) the length of the deliberations, (3) the length of the trial, (4) the complexity of the issues, (5) any proper communications which the judge has had with the jury, and (6) the effects of possible exhaustion and the impact which coercion of further deliberations might have had on the verdict. *United States v. Byrski,* 854 F.2d 955, 961 (7th Cir.1988). While not a requirement in every case, polling the jurors as to whether there is truly a deadlock can be useful in determining if a mistrial is necessary. *United States v. Barbioni,* 62 F.3d 5, 7 (1st Cir.1995); *Fay v. McCotter,* 765 F.2d 475, 478 (5th Cir.1985).

The majority in its opinion has stated that a trial judge should not declare a mistrial without allowing the defendant an opportunity to object or to offer input. I agree, for even though the manifest necessity rule vests the trial court with certain discretionary powers, the defendant should be given the opportunity to be heard and the court thereafter should on the record state its reasoning for declaring a mistrial employing the factors set forth above. This will lend considerable assistance to the appellate court when it is called upon to determine whether there has been an abuse of discretion.