STATE of Minnesota, Respondent,

v.

Ralph Henry SOYKE, Appellant.

No. C0–98–499.

Court of Appeals of Minnesota.

Oct. 27, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, (for respondent).

James T. Hankes, Chief Ramsey County Public Defender, Leif Carlson, Assistant Public Defender, St. Paul, (for appellant).

Considered and decided by HUSPENI, P.J., and RANDALL and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Appellant Ralph Soyke filed this appeal from an order denying his motion to dismiss a complaint charging him with second- and fifth-degree criminal sexual conduct after the district court declared a mistrial in Soyke's first trial when the jury appeared deadlocked. We extend discretionary review of the order and affirm.

## FACTS

The complaint charged Soyke with engaging in nonconsensual sexual contact with two juveniles while Soyke was a ride attendant at the state fair. The initial complaint charged two counts of fifth-degree criminal sexual conduct, but was later amended by adding two counts of second-degree criminal sexual conduct.

Soyke provided this court with only a partial transcript of the trial proceedings. But it appears to be undisputed that the trial was very short, with opening statements, testimony, and closing arguments all occurring on the same day. The jury was instructed the following morning and began deliberations at 9:00 a.m.

The jury sent a note to the district court shortly after beginning deliberations. By the time the court had gathered all the parties together to consider a response, the jury had sent a second note. The first note stated, "We need a tape recorder or the transcript of the cassette." This referred to the tape recording of Soyke's statement to police. The court responded that the jury would not be given the transcript, but could choose to have the tape played in open court.

The jury's second note stated, "If [defendant is] guilty in [the] 2nd [degree], is 5th [degree] automatic?" The court responded to this question by instructing that the jury needed to address each count separately and return a verdict on each count. The court then sent the jury back in for further deliberations at about 10:20 a.m.

The court reconvened at 3:21 p.m., and read a note from the jury, which stated:

> We are stuck, and do not see enough in what was presented as testimony, evidence and fact that we could come to a unanimous decision. Enough feel strongly on one side or another that we are not seeing a solution.

What guidance or process can you offer?

The court at first responded that the jury should reread the instructions, but then questioned the jury foreman, who responded that the note reflected the sentiment of the jury. The court reread CRIMJIG 3.04, on the necessity of a unanimous verdict and the jurors' duty to deliberate and be willing to re-examine their views. 10 *Minnesota Practice*, CRIMJIG 3.04 (1990).

After reading CRIMJIG 3.04, the court questioned the jury foreman whether "it would be of any benefit to have the group return for further deliberation." The foreman responded:

> We are at a point where there [are] enough polarized opinions, that we do not see a way to convince one side or the other to come together in one side or the other, and so we don't believe that we can come back together and keep talking it over. We feel like we have exhausted all of those possibilities. What we were specifically looking for was direction, because we don't know what we can and cannot do from that point.

The foreman then explained that the jury would like to ask for some clarifications on the evidence, but was aware it probably could not do so.

The court responded that it could read back testimony, but could not allow evidentiary questions from jurors. The court then expressed concern about not doing anything that would affect the jury's decision-making. The court explained that it was trying to decide whether "continued deliberation would bring forth a verdict" or the jury was "hopelessly deadlocked." After a discussion with

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

counsel at the bench, the court asked the jury:

> Did [the foreman] fairly summarize the polarization and the difficulties of the group being able to resolve the issues in this case?

Most of the jurors responded affirmatively. The court then declared a "hung jury" and a mistrial.

Soyke filed a motion to dismiss the complaint on double jeopardy grounds, arguing that there had been no "manifest necessity" for the court's declaration of a mistrial. Following a hearing, the district court denied the motion. The court agreed that both parties had wanted the jury to deliberate further and stated that the court itself had been similarly inclined until the jury came back in and indicated that jurors were "entrenched in their positions." The court concluded that it had made a decision that there was "no reasonable possibility of a verdict" and declined to dismiss the complaint.

## ISSUE

Does double jeopardy bar a retrial of appellant?

## ANALYSIS

■ We must first briefly address this court's jurisdiction over this appeal. Soyke has not been retried or sentenced on the criminal sexual conduct charges, so the district court's order, despite the trial and declaration of a mistrial, is a pretrial order from which Soyke has no right of appeal. *See* Minn. R.Crim. P. 28.02, subd. 2(2) (defendant has no right of appeal before final judgment, except for certain types of orders); *State v. Murphy*, 537 N.W.2d 492, 494–95 (Minn.App. 1995) (holding pretrial order denying motion to dismiss on double jeopardy grounds is not appealable as of right). But because the record is fully developed and the issue fully briefed, we will extend discretionary review. *See generally State v. Childs*, 269 N.W.2d 25, 26 n. 1 (Minn.1978) (explaining reason for extending discretionary review); Minn. R.Crim. P. 28.02, subd. 3 (discretionary appeal).

■ Soyke argues that double jeopardy bars his retrial on the criminal sexual conduct charges after the district court declared a mistrial over a defense objection. Although the district court concluded the jury was deadlocked, Soyke argues there was no "manifest necessity" supporting the mistrial.

■ The Double Jeopardy Clause protects a defendant against repeated prosecutions for the same offense. *Oregon v. Kennedy*, 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). The "Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.'" *Id.* at 671–72, 102 S.Ct. at 2087 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)).

> Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard first enunciated in Justice Story's opinion for the Court in *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824).

*Id.* at 672, 102 S.Ct. at 2087. The most common form of "manifest necessity," the "prototypical example," is the hung jury. *Id.*

■ Thus, we agree with Soyke that the "manifest necessity" standard applies when a mistrial is declared due to a hung jury. But our review is very limited. The Supreme Court has made it clear that of all the findings of "manifest necessity" for a mistrial, the declaration of a mistrial due to a hung jury is the one entitled to the most deference on appeal. *Arizona v. Washington*, 434 U.S. 497, 509–10, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). The Supreme Court in *Washington* stated that

> in this situation there are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting de-

liberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. *If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock.* * * * The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.

*Id.* (footnotes omitted) (emphasis added).

██ The general standard of review of a decision to declare a mistrial is the abuse-of-discretion standard. *State v. Long,* 562 N.W.2d 292, 296 (Minn.1997). The supreme court, however, has emphasized that the " 'highest degree of respect' " is due the trial court's decision that a mistrial is necessary. *Id.* (quoting *Arizona v. Washington,* 434 U.S. at 511, 98 S.Ct. at 833). Furthermore, as noted above, the highest degree of deference is due to the declaration of a mistrial due to a hung jury. As the supreme court has stated,

> [t]he belief that another judge might have proceeded in a different fashion does not render one trial judge's declaration of mistrial error.

*Id.* at 297–98.

Here, the district court was presented with the foreman's note, as well as the foreman's oral statement on the record and the jury's assent, all providing solid evidence of deadlock. Furthermore, the court had an opportunity to observe the demeanor of the foreman and the other jurors and to assess the depth of their feeling of deadlock. Although both attorneys wanted the court to instruct the jury to continue deliberations, it appears that those opinions were primarily formed and stated before the jury foreman personally expressed the jury's frustration, stating that they did not believe they could "keep talking it over," and that they had "exhausted all of those possibilities."

██ Soyke's argument that the jury had not deliberated long enough to be deadlocked lacks merit. It is undisputed that the trial was short, lasting a single day, and involving a relatively straightforward credibility issue. Deliberations of four-and-a-half to five hours are not plainly inadequate to bring a jury that has heard less than a day's worth of testimony to a point of deadlock. A court must take care not to coerce a verdict or lead the jury to believe that a deadlock is not a permissible option. *State v. Jones,* 556 N.W.2d 903, 912 (Minn.1996).

██ Soyke's argument that the district court should have reconferenced with counsel before declaring a mistrial has some merit but does not furnish grounds for reversal. The Iowa Court of Appeals rejected a similar double jeopardy claim in *State v. Connelly,* 551 N.W.2d 329 (Iowa Ct.App.1996). In *Connelly,* the jury also returned with questions after deliberating for a few hours. *Id.* at 330. After these were answered and the jury had deliberated for a total of about five hours, the jury informed an attendant it was deadlocked. *Id.* at 331. The judge asked the foreperson if further deliberations would be fruitless, received an affirmative response, and then polled the remaining jurors, who all replied affirmatively. *Id.* The court then, "without further inquiry, discharged the jury." *Id.* The appellate court, while noting the trial judge "should have solicited the input of trial counsel and defendant," held there was no abuse of discretion in declaring a mistrial. *Id.* at 331–32. The court noted the trial judge "was in the best position to assess the nature of the case and the conclusiveness of the jury's deadlock." *Id.* at 332.

The district court here observed the demeanor of the jurors and had an opportunity to gauge the depth of their disagreement. We cannot second-guess the district court's decision that the jury was indeed sufficiently deadlocked that there was a "manifest necessity" of declaring a mistrial.

## DECISION

The district court did not err in declaring a mistrial due to jury deadlock. Therefore, the

Double Jeopardy Clause does not bar a retrial of Soyke.

**Affirmed.**