**STATE of Iowa, Appellee,**

v.

**Kent Allen HARRISON, Appellant.**

No. 97–97.

Supreme Court of Iowa.

May 28, 1998.

**236**

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Gerald Partridge, County Attorney, and Barbara Edmondson, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

These criminal convictions must be reversed because the accused had formerly been placed in jeopardy on the same charges. Defendant Kent Allen Harrison is alleged to have entered his parents' home, confronted his mother about a property dispute, and threatened to kill her. Officers were called and proceeded to Harrison's trailer where he confronted them with a rifle. Because they considered him intoxicated, the officers withdrew and met with family members where it was agreed to best let him "sleep it off" and to confront him the following morning.

While this consensus was being reached, Harrison returned to his parents' house and stole a utility tractor. This prompted a search for Harrison which eventually led back to his trailer. When the authorities arrived, Harrison once again threatened them with the rifle and later a shotgun. He was screaming profanities and was "very, very irate" and "totally out of control." Harrison eventually went inside his trailer, left the shotgun, and returned outside to speak with the officers. He was ultimately arrested following a brief struggle.

Harrison was later charged with first-degree burglary in violation of Iowa Code sections 713.1 and 713.3 (1997), in relation to the break-in at his parents' home. He was also charged with two counts of assault on a peace officer while displaying a dangerous weapon in violation of Iowa Code sections 708.1 and 708.3A(2), and interference with official acts in violation of Iowa Code section 719.1(1). Trial began on these charges before Judge James D. Jenkins and a jury.

Although the burglary charge was later dropped, it must be discussed in some detail because of what transpired in Harrison's counsel's defense of it. To prove first-degree burglary the State had to establish that Harrison broke or entered into his parents' residence "having no right, license or privilege to do so." Iowa Code § 713.1. On direct examination Harrison's mother, Patricia Harrison, testified she was at home with the door closed and locked. She testified Harrison then

> kind of went like this to knock, and it—the door window came out about this far. And I said, "Wait a minute, Kent," I said, "I'll unlock it." And I did. And let him in.

Later, in Patricia's direct examination, the prosecutor elicited the following testimony:

Q. In the statement that you wrote that day, is it true that [Harrison] came down and kicked in your glass door? A. No. It was—the corner of it was clear up where he couldn't have kicked that high, and it's got wrought irons on my door. It's a security door. If I wrote that, that was—

Q. Do you remember writing in your statement, "He came down, kicked in my glass door?" A. No, I don't remember that. Because I—all I know is that he pushed, you know, it came out when he went to knock on it real hard like that. And I said no, I will just unlock the door for him.

Q. Did he make you or force you to unlock the door? A. No. Because I just—I always unlock it when he comes down. I

mean, he just happened to hit it when I was ready, and I said, "Just a minute, I'll get it unlocked." Because I was getting ready to take my bath. I had drawn dishwater and was getting ready to take a bath when I got home.

Q. In your statement do you remember saying, "Made me unlock my door?" A. No, I—well, when I said it, that isn't what he did because he was—he hit the door, and I said, "Just a minute," and I unlocked it. I said, "I'll unlock it." He didn't make me because I've always unlocked my doors for the kids.

This testimony was in marked contrast with Patricia's sworn statement which related:

I got home, seen Kent had been to my house, clothes basket was broke so knew he was drinking. He came down, kicked in my glass door, made me unlock my door then said "run bitch, I kill you." He run upstair to get a gun and shell. He said he would get me yet.

Patricia explained that her trial description of the incident differed from her pretrial description because she wanted her son to receive help for his drinking.

On cross-examination defense counsel, James Carey, asked Patricia to read her statement to the jury. The trial court, Judge Jenkins, noted that Patricia should not read from the statement because it had not been admitted into evidence. The prosecutor later offered Patricia's statement without objection.

Following the close of the State's case, Judge Jenkins sua sponte declared a mistrial, prompted, he said, because Harrison's counsel's efforts were so inadequate as to deny him a fair trial. The judge stated his views in detail, emphasizing counsel's participation in placing Patricia's pretrial statement in evidence.

New defense counsel moved to dismiss all charges as barred by the former-jeopardy clause of the fifth amendment of the United States Constitution. On hearing, the dismissal motion was submitted to Judge James P. Rielly who found there was manifest necessity for declaring a mistrial, and accordingly denied the motion.

The State elected to dismiss the burglary charge in view of the inconsistency between Patricia's trial testimony and her written statement. Harrison was retried in October 1996 before Judge Robert Bates on the remaining charges. A second mistrial was declared by agreement of parties and is not at issue in this appeal. Following a third trial, the jury returned guilty verdicts on all remaining charges. The matter is before us on Harrison's appeal following sentence.

■ I. Iowa rule of criminal procedure 10 requires defenses and objections based on defects in the institution of the prosecution to be raised prior to trial and no later than forty days after arraignment. Iowa R.Crim. P. 10(2)(a), (4). A claim of former jeopardy is subject to the requirements of rule 10. *See State, v. Tobin;* .333 N.W.2d 842, 845 (Iowa 1983). Harrison's second counsel, appointed January 26, 1996, moved to dismiss on former jeopardy grounds February 14, 1996. This was of course prior to the second trial but far more than forty days following arraignment which had taken place long before the mistrial was declared on December 20, 1995.

■ The State argues that Harrison's former-jeopardy claim should have been raised within forty days following the declaration of mistrial. We disagree. Nothing in criminal rule 10 supports a forty-day requirement following a mistrial declaration. Under different facts, in cases where appointment of new counsel was not achieved promptly as it was here, the forty-day period following mistrial could expire before appointment of counsel. The court and prosecution were promptly alerted to the fact that former jeopardy would be a central claim in Harrison's defense. Under the circumstances here, criminal rule 10 is satisfied if the point is raised before trial. This is consistent with the rule in federal practice. *See United States v. Branham,* 97 F.3d 835, 841 (6th Cir.1996) (federal rule of criminal procedure 12(b)(1) dictates defendant is required to raise former jeopardy issue by motion prior to trial). We therefore proceed to the merits. Our review

is on error. *State v. Dixon,* 534 N.W.2d 435, 438 (Iowa 1995).

■ II. The former-jeopardy clause of the fifth amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. A criminal defendant is placed in jeopardy once he or she is put to trial before the trier of fact, whether the trier is a judge or jury. *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971). Harrison was placed in jeopardy when the jury was sworn. *See Dixon,* 534 N.W.2d at 439. At that time, he gained a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). Thus, "as a general rule, the prosecution is entitled to one, and only one, opportunity to require an accused to stand trial." *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717, 727–28 (1978). Nonetheless the prohibition against former jeopardy does not prohibit a retrial following mistrial if a defendant consents or waives the right to assert former jeopardy, or when there is manifest necessity to terminate the first trial. *Oregon v. Kennedy,* 456 U.S. 667, 672–73, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416, 422–23 (1982); *Dixon,* 534 N.W.2d at 440. Because there is no hint that Harrison or his counsel consented to the mistrial declaration, this case will turn on the State's claim of manifest necessity.

■ This term of art, manifest necessity, does not mean absolute necessity. *Dixon,* 534 N.W.2d at 440. We recognize degrees of necessity exist and require a high degree in order to support a trial judge's sua sponte declaration of mistrial before a retrial would not violate former jeopardy. *Washington,* 434 U.S. at 506, 98 S.Ct. at 831, 54 L.Ed.2d at 728–29; *Dixon,* 534 N.W.2d at 440. "We resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion.'" *Dixon,* 534 N.W.2d at 440 (quoting *Downum v. United States,* 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100, 104 (1963)). The burden is on the prosecution to establish manifest necessity.

*Washington,* 434 U.S. at 505, 98 S.Ct. at 830, 54 L.Ed.2d at 728.

■ Even when a high degree of necessity exists which would ordinarily justify a mistrial, the trial judge must make a further inquiry to determine if an alternative measure—less drastic than a mistrial—would alleviate the problem. If further inquiry could have been made, or alternatives taken to cure the prejudice, the trial court would abuse its discretion in finding manifest necessity. *See Jorn,* 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 557–58; *Dixon,* 534 N.W.2d at 441.

■ III. Under the doctrine of manifest necessity, a court has a duty to declare a mistrial when the ends of public justice demand it. *Dixon,* 534 N.W.2d at 439. But extreme caution should be exercised. *Id.* We have previously remarked that:

> [I]t is ordinarily a dangerous practice for a presiding judge to contribute his [or her] efforts in an attempt to equalize what [the judge] perceives to be disparity in the trial ability of opposing counsel. Such practice is apt to proceed from disparity in the rightness of one side or the other, rather than the preparation or ability of counsel. It is often difficult for the presiding judge to distinguish exactly where the one disparity begins and the other ends.

*State v. Glanton,* 231 N.W.2d 31, 35–36 (Iowa 1975). The present case is another graphic illustration of the point. Judge Jenkins believed Harrison's original counsel's tactics in cross-examining Patricia Harrison, thereby prompting the State to offer her pretrial statement, constituted ineffective assistance of counsel. We are not persuaded.

Granted, at the close of Patricia's direct examination, the only evidence submitted to the jury was her testimony that she voluntarily admitted the defendant into the house. Her contradictory pretrial statement had not yet been offered. This is not to say it would not have been offered.

The State's assertion that there was "no indication that the prosecutor would have offered [Patricia's statement] into evidence if [defense counsel] had not prompted her to do

so," cannot be reconciled with other evidence. On two occasions during direct examination the prosecutor tried to show Patricia the statement as a prelude to admission, but both times she declined to look at the statement. Moreover the written statement was marked as the State's exhibit. It is reasonable to therefore conclude the prosecution would have later offered it.

When trial counsel undertook to cross-examine Patricia, she had given testimony highly favorable to Harrison, and had just faced a State attempt to impeach her by way of pointing out her inconsistency. Defense counsel's trial tactic of trying to then explore the inconsistent versions may well have seemed unwise to the presiding judge. But, in view of a reasonable anticipation that introduction of the pretrial statement was imminent anyway, we are wholly unwilling to certify it as unwise. In any event, wise or unwise, it was a trial tactic. Decisions concerning trial tactics do not qualify as ineffective assistance of counsel. *State v. Risdal,* 404 N.W.2d 130, 133–34 (Iowa 1987).

For a judge, sua sponte, to declare a mistrial because of perceived inadequacy of defense counsel is—and certainly should be—an extremely rare event. Even where an inadequacy exists, a far safer practice would be for the court to intervene only in ruling on posttrial motions following a conviction—if indeed a conviction occurs. *See Commonwealth v. Phetsaya,* 40 Mass. App.Ct. 293, 663 N.E.2d 857, 861 (1996) (unwise for judge to declare a mistrial due to counsel's alleged ineffectiveness because it is chancy business to predict a verdict a jury may return in a case).

We conclude that jeopardy attached during Harrison's first trial. We cannot agree that the case can or should be rescued on the basis of manifest necessity. Harrison's convictions must be reversed and the case remanded for dismissal of all charges.

**REVERSED AND REMANDED.**