**IN THE COURT OF APPEALS OF IOWA**

No. 13-1251
Filed July 16, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**FAITH DAYLENE LOHR,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Peter B. Newell, District Associate Judge.

A defendant appeals her conviction for possession of morphine. **AFFIRMED.**

Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Normand Klemsrud, County Attorney, and Todd Prichard and William Baresel, Assistant County Attorneys, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Faith Lohr challenges her conviction for possessing morphine as a second-time drug offender. She argues the district court abused its discretion by declining to continue the trial without exploring her reason for seeking to hire private counsel. Lohr also contends the court should have sua sponte declared a mistrial after learning a juror may have overheard a conversation about the case in the clerk of court's office. Alternatively, Lohr contends counsel was ineffective for not moving for a mistrial based on the alleged juror misconduct. She also argues counsel should have moved to suppress statements she made to police at the scene of the traffic stop.

We find no abuse of discretion in the district court's denial of a continuance or in its handling of the juror situation. Because the record is insufficient to decide Lohr's claims of ineffective assistance of counsel, we preserve them for possible postconviction-relief proceedings.

## I.    Background Facts and Proceedings

On the evening of March 3, 2012, Floyd County Deputy Benjamin Kostka followed a pickup truck driven by Ron Weber into and out of a truck stop along Highway 218. Weber eventually stopped the truck on the shoulder and the deputy approached, asking Weber if everything was all right. Weber said he was checking the lug nuts because his tire had fallen off the day before and he felt some vibrations.

At this time, Deputy Kostka noticed passenger Lohr sitting on the floor of the pickup, between the two bucket seats. The deputy asked her to step out of

the truck. Lohr sat in the patrol car while the deputies dealt with a second passenger who had outstanding arrest warrants.

Weber consented to a search of his truck and agreed to wait for a drug dog to arrive at the scene. About fifteen to twenty minutes later, Mitchell County Sheriff's Deputy Gregg Halbach and his canine, Winnie, arrived. The dog alerted on a clear plastic tube between the two seats where Lohr had been sitting. A white powdery substance in the "snort tube" field tested positive for methamphetamine.

Deputy Kostka found a travel bag in the cab of the truck. Inside the bag, he discovered a baggie containing several pills. At the scene of the stop, in response to a question from Deputy Kostka, Lohr admitted the bag belonged to her. Deputy Patrick Shirley asked if the pills were hers. She replied one of them was Lortab, which she had obtained by prescription for pain after she had dental surgery. She denied knowing anything about the other pills. That night the deputies arrested Lohr for possession of drug paraphernalia. Later lab testing revealed the other pills were morphine.

On May 30, 2012, the Floyd County Attorney charged Lohr with two class "D" felonies: possession of a schedule III controlled substance, hydrocodone, third offense, in violation of Iowa Code sections 124.401(5) and 124.208(5)(a)(4) (2011), and possession of a schedule II controlled substance, morphine, in violation of sections 124.401(5) and 124.206(2)(a)(13), having been previously convicted under chapter 124.

Lohr failed to appear on June 18, 2012, for her arraignment. The court originally appointed the public defender to represent Lohr, but that office withdrew because it represented her co-defendant. The court appointed attorney David Kuehner to represent Lohr on July 30, 2012. She entered a not guilty plea and written arraignment on August 6, 2012.

At the defendant's request, the trial was rescheduled four times: first to November 28, 2012; second to December 12, 2012; third to January 23, 2013; and a fourth pretrial conference was set for February 12, 2012. The court ordered Lohr to appear personally for that pretrial conference. When she did not appear, the court issued a warrant for her arrest. Authorities arrested Lohr on February 19, 2013. The court rescheduled the pretrial conference for March 12, 2013. On that date, the defense again asked for a continuance, and the court rescheduled the trial for April 2013. When Lohr failed to appear for the final pretrial conference, having not maintained contact with her attorney, the court again issued a bench warrant. The court set a pretrial conference for May 7, 2013, and the defense yet again asked for a continuance.

The trial was finally set for June 13, 2013. On that date the State dismissed the hydrocodone charge, stating it had "insufficient evidence to justify prosecution" of that offense. Also on the morning of trial, Lohr asked for time to hire a different attorney. The court considered her request a motion to continue and denied it. A jury heard the evidence and returned a guilty verdict that same day. The jury also determined Lohr had two previous drug convictions: one for possession of a controlled substance and one for possession of drug

paraphernalia. The parties eventually agreed the paraphernalia offense could not be used for sentencing enhancement because it arose from the same incident as the possession of morphine. The parties stipulated that Lohr would be sentenced for an aggravated misdemeanor.

On July 30, 2013, the district court sentenced Lohr to 180 days jail, suspending all but seven days, and two years probation; suspended a $625 fine and surcharge; and ordered her to obtain a substance abuse evaluation and follow through with any recommended treatment. The court also required Lohr to undergo random drug testing and prohibited her from consuming alcohol or entering bars, taverns, or liquor stores. Lohr now appeals.

## II.    Scope and Standards of Review

Generally, we review the denial of a motion for continuance for an abuse of discretion. *State v. Artzer*, 609 N.W.2d 526, 529 (Iowa 2000). If a defendant's motion is based on constitutional grounds, we review the record de novo. *See State v. Thompson*, 597 N.W.2d 779, 782 (Iowa 1999) (review of constitutional claims is de novo). We also review claims of ineffective assistance of counsel de novo due to their constitutional implications. *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

The standard for the district court to sua sponte declare a mistrial is "manifest necessity." *State v. Harrison*, 578 N.W.2d 234, 238 (Iowa 1998). In cases where the court has granted a mistrial without a motion from either party, a retrial would be possible only if the State could show a high degree of need for ending the first trial before the jury rendered a verdict. *Id.*

## III.   Analysis

### A.   Motion to continue

Lohr claims the district court violated her right to a fair trial when it denied her request to hire private counsel.  On the morning of trial, the court held the following hearing in the courthouse law library:

> [Defense Counsel]: My client, while meeting with her in the conference room down the hall, indicated she would like a new attorney in this matter.
> [Lohr]: I am hoping to hire a private attorney.
> The Court: Well, Ma'am, it's the morning of trial.
> [Lohr]: Yes.
> The Court: The Court is advised the State is just—We're only going to trial on the one charge—
> [Lohr]: I just—I feel that that kind of changes things for me, so—
> The Court: Well, again, I think it's too late to try to change that.  We've got—
> [Lohr]: I just think there are extenuating circumstances, sir.  I would ask for a chance to hire a private attorney.
> The Court: Okay.
> Well, again, we've got a panel that is being—Well, they're collected already; they're in the courtroom.  The State's got witnesses who are prepared.  We've had two prior pretrials in this matter.  So I am going to deny your—I'll treat it as a Motion to Continue.  I'm going to deny that.

While the district court treated Lohr's request as a motion to continue, on appeal she casts it as a motion for change in counsel.  She faults the district court for summarily dismissing her request without allowing her to explain what "extenuating circumstances" had arisen to impact her right to effective representation.  She claims her due process rights were violated because "she suffered from ill represented counsel."

The State challenges Lohr's preservation of her constitutional claims to due process and effective assistance of counsel.  The State emphasizes the

party asking to continue a trial date must show "good and compelling cause," Iowa R. Crim. P. 2.9(2) or that "substantial justice would be more nearly obtained." Iowa R. Civ. P. 1.911(1); *see State v. Artzer*, 609 N.W.2d 526, 530 (Iowa 2000).

We agree with the State on error preservation. Because Lohr did not assert a constitutional basis for the continuance in the district court, we will not consider those claims on appeal. *See State v. Leutfaimany*, 585 N.W.2d 200, 209 (Iowa 1998).

Lohr acknowledges the district court has discretion to deny a continuance when the requestor fails "to articulate specific grounds" for delaying the trial. *See State v. Melk*, 543 N.W.2d 297, 300 (Iowa Ct. App. 1995). But she argues the district court here did not give her an opportunity to identify any compelling reason at the brief hearing on the morning of trial. While it may have been best practice for the court to probe the source of Lohr's dissatisfaction with counsel, considering all circumstances in this case, we cannot find the district court abused its discretion. *Id.* ("Although the trial court would have been in a better position to exercise its discretion if a hearing would have been held before ruling on the motion for continuance, we cannot conclude the decision rendered by the court constituted an abuse of discretion.").

Lohr had been represented by attorney Kuehner for ten and one-half months before she asked the court on the morning of trial for additional time to hire private counsel. During those months, the defense asked for and received six continuances of the trial. Twice the court issued bench warrants because of

Lohr's failure to appear personally for a pretrial conference. Given this history, it was reasonable for the court to view her morning-of-trial request to hire private counsel as a delay tactic. *See State v. Tejeda*, 677 N.W.2d 744, 749 (Iowa 2004) ("Last-minute requests for substitute counsel, insofar as they constitute a delay tactic, are disfavored.").

*Tejeda* recognized a district court's duty of inquiry once a defendant requests substitute counsel based on an alleged breakdown in communication. *Id.* at 750. But that duty of inquiry is triggered only by a "colorable complaint" concerning the deterioration of the attorney-client relationship. *Id.* at 751 (noting Tejeda wrote two letters to the court detailing his disagreements with counsel). In this case, Lohr offered no colorable complaint about attorney Kuehner. In fact, she did not ask for substitute counsel to be appointed, but rather—despite her indigency—asked for the chance to hire a private attorney.

Even on appeal, she does not allege how Kuehner's representation adversely affected her case. She does not cite *Tejeda* or ask for the preservation remedy awarded in that case. 677 N.W.2d 755. Because we find no abuse of discretion or prejudice to Lohr, we affirm on this issue.

### B. Motion for mistrial

After the close of the evidence, the district court released the jury for lunch. After the lunch recess and before closing arguments, the court met with the prosecutor, defense counsel, Lohr, and juror S.R. The following conversation took place on the record:

> The Court: [to S.R.] We are just concerned, the Court Attendant thought you might have overheard some conversation about this case taking place in the Clerk's Office.
>
> [Juror S.R.]: No, I wasn't paying—I mean, if there was a conversation, I wasn't paying any attention to it.
>
> The Court: That's all—That's all we needed to know. Sorry about—We didn't mean to traumatize you. All right, Thanks. ([Juror S.R.] returned to the jury room at this point).
>
> [Defense Counsel]: I think that was genuine surprise.
>
> The Court: I just worry, when you pull one juror out—Okay. All right. So, if you guys are ready to go—

Neither party sought a mistrial or expressed concern over the behavior of the juror. Defense counsel believed the juror was credible in her response that any conversation in the clerk's office did not attract her attention. The entire jury then returned to the courtroom, and the court read the instructions.

On appeal, Lohr contends both S.R.'s act of overhearing of an extrajudicial conversation about the case and her "command attendance before the court outside the presence of the other jurors" tainted the proceedings and "overshadowed" the verdict. Lohr contends the district court should have, even without a motion from counsel, declared a mistrial upon learning S.R. was privy to discussions regarding the matter before its submission to the jury.

Once jeopardy has attached in a criminal case, a court may only discharge the jury from giving its verdict if a "manifest necessity" exists for a mistrial or, stated differently, only if "the ends of public justice would otherwise be defeated." *See State v. Dixon*, 534 N.W.2d 435, 441–42 (Iowa 1995), *receded from on other grounds in State v. Huss*, 657 N.W.2d 447 (Iowa 2003). Our supreme court has advised presiding judges to use "extreme caution" before sua

sponte declaring a mistrial and that doing so should be "an extremely rare event." *Harrison*, 578 N.W.2d at 238.

We have sparse information concerning the juror's conduct in this case. For instance, we do not know who was talking in the clerk's office, what they were saying, or how juror S.R. came to be within earshot of the conversation. Moreover, other than a casual aside from the judge that he worried about pulling a juror out of the jury room, the record offers no insight if the rest of the jurors were aware of S.R.'s brief exchange with the court. In this vacuum, Lohr cannot show the juror's situation ranked as an extremely rare and prejudicial event calling for the sua sponte grant of a mistrial. As the Arizona Supreme Court aptly observed, "If a party wants a mistrial, it ordinarily must ask for one." *State v. Laird*, 920 P.2d 769, 773 (Ariz. 1996).

Which brings us to Lohr's alternative argument: that she did not receive competent representation when her attorney failed to ask for a mistrial following the meeting with S.R. To prove counsel was constitutionally ineffective, Lohr must show the attorney's subpar performance and the reasonable probability of a different outcome but for his omission. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014).

Generally, we do not resolve claims of ineffective assistance on direct appeal. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). We prefer to leave them for postconviction-relief proceedings so a better record may be developed. *Id.* Preservation is the proper remedy for Lohr's claim of ineffective assistance in response to alleged juror misconduct.

**C.     Motion to suppress**

Finally, Lohr claims her counsel was ineffective for failing to file a motion to suppress her statements to the deputies while she was seated in the patrol car.  She contends the statements were inadmissible because she was in custody and not given the *Miranda*[1] warnings before being interviewed.  The record does not provide sufficient details about her conversations with the deputies to determine if she was subjected to custodial interrogation or if counsel could have had a strategic reason not to file a suppression motion.  *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.").  Accordingly, we preserve this claim for possible postconviction-relief proceedings.

**AFFIRMED.**

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 473–76 (1966).