# IN THE COURT OF APPEALS OF IOWA

No. 18-1839
Filed March 18, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEROD KURT MILLER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wright County, DeDra L. Schroeder (mistrial and dismissal motions) and James M. Drew (trial), Judges.

Defendant appeals his convictions for willful injury causing serious injury and domestic abuse assault (strangulation) causing bodily injury. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

Jerod Miller appeals his convictions for willful injury causing serious injury and domestic abuse assault (strangulation) causing bodily injury. We conclude the retrial of Miller did not violate his right against double jeopardy because he requested a mistrial in his first trial. We determine Miller has not shown he received ineffective assistance on the ground defense counsel did not object to a video. Finally, we find Miller was not denied his right to a speedy trial. We affirm Miller's convictions.

## I.      Background Facts & Proceedings

Miller and his girlfriend, H.S., resided together in 2018. Beginning on February 23, 2018, and continuing into February 24, Miller assaulted H.S. several times. At one point, Miller bent H.S. backward over the kitchen sink and pressed his thumbs into her eye sockets, causing H.S. to lose consciousness. H.S.'s mother took H.S. to the hospital, where H.S. received treatment for her injuries, including swelling of the brain and an annular tear to her lower lumbar region. She had bruising all over her body, including her face. H.S. also had injuries along her neck indicative of strangulation. Dr. Subhash Sahai testified the injuries to H.S. created a substantial risk of death.

Miller was charged with willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2018), and domestic abuse assault (strangulation) causing bodily injury, in violation of section 708.2A(5). Miller gave notice of the defenses of diminished responsibility, self-defense, and excited/agitated delirium.

Miller was prescribed Depakote for anxiety, which was to be taken twice a day. The Wright County jail had difficulty refilling Miller's prescription. Lynn Morris,

the assistant jail administrator, emailed Integrated Telehealth Partners (ITP), the jail's medical provider, seeking a refill before Miller ran out of his medication. At 4:45 p.m. on July 9, Janet Raines of ITP tried to fax the prescription to the pharmacy, but the fax did not go through.

Miller's jury trial began on July 10. Miller had his morning dose of medication that day, but the jail did not have sufficient medication on hand for his evening dose. At 4:02 p.m., Raines informed the jail she successfully faxed the prescription to the pharmacy and also called it in to the pharmacy. The jail staff was busy with other issues, including booking in a new inmate, and did not see the fax from Raines until 5:30 p.m., when the pharmacy was closed. The jail staff talked to medical professionals and received information that Miller should be fine although he missed his evening dose of Depakote.

On the second day of the trial, July 11, defense counsel informed the court Miller had not received his medication the night before. Miller received his medication at 9:37 a.m. on July 11, so he missed one dose. Defense counsel stated he was not alleging bad faith by the jail but there was concern because Miller had not taken a medication usually prescribed for thought and mood disorders. The court sent the jury home, stating the trial would resume the next day.

On July 12, the third day of the trial, the State presented a letter by Dr. Kovilparambil Anthony to the court, which stated, "If someone who is stable on Depakote misses just one dose, it can potentially reduce the therapeutic level but whether it will have any significant effect depends on the person. Most likely it will

not cause any major clinical issues as long as the person resumed Depakote immediately."

On the same day, defense counsel stated Miller was not able to proceed with the trial because he was unable to think clearly and focus. Counsel stated he did not know "whether it's going to be three days or two weeks before Mr. Miller is prepared to proceed." Defense counsel requested a mistrial with prejudice, stating, "I think we've shown a lot of our defense already. And I believe that Mr. Miller would be prejudiced by having to retry this case again." The State did not resist the motion for a mistrial but asked that it be without prejudice so Miller could be retried. The district court granted a mistrial without prejudice.

On July 24, Miller filed a motion to dismiss, claiming the actions of the jail staff should be considered State action. Miller asserted a second trial would violate his right against double jeopardy. He also stated a second trial would violate his right to a speedy trial, as his original speedy trial deadline had passed.

The district court ruled as follows:

> The Court finds that the jail made reasonable efforts to maintain a prescription for the Defendant and that it was not intentional that there was a brief lapse between use of one prescription and the renewal of the next.
>     The Court does not make a finding of any prosecutorial misconduct on the part of the Wright County Jail that could be imputed on the State of Iowa or rises to the level that necessitates dismissal of this matter.
>     Double jeopardy does not apply in this case. The State had completed a portion of the State's case in chief when this matter came to the attention of the Court. The Motion for Mistrial was granted at the request of counsel.

The court denied Miller's motion to dismiss.

A new criminal trial commenced on August 7. The jury found Miller guilty of willful injury causing serious injury and domestic abuse assault (strangulation) causing bodily injury. Miller filed post-trial motions, which again raised the issue of the mistrial in the earlier trial. The court declined to revisit that issue. Miller was sentenced to a term of imprisonment not to exceed ten years on the willful injury charge and five years on the domestic abuse assault charge, to be served consecutively. Miller appeals.

## II. Double Jeopardy

Miller claims he was subjected to double jeopardy when he was tried a second time after the declaration of a mistrial in his first trial. He states that under the Fifth Amendment to the United States Constitution, he is protected from repeated prosecution for the same offense.

"The Double Jeopardy Clause of the United States Constitution 'is applicable to state criminal trials through the Fourteenth Amendment due process provision.'" *State v. Kramer*, 760 N.W.2d 190, 194 (Iowa 2009) (citation omitted). Under the Double Jeopardy Clause, the State cannot make multiple attempts to convict a defendant for the same offense. *Id.* On constitutional claims, such as those of double jeopardy, our review is de novo. *Id.*

"The protections of the Double Jeopardy Clause are implicated only when the accused is actually placed in jeopardy." *Id.* "This state of jeopardy attaches when a jury is empaneled and sworn, or, in a bench trial, when the judge begins to receive evidence." *Id.* Miller was placed in jeopardy when the jury was sworn in at his first trial. *See State v. Lasley*, 705 N.W.2d 481, 493 (Iowa 2005) ("In a trial by jury, jeopardy attaches when the jury is empaneled and sworn.").

"The general rule [is] that the guarantee against double jeopardy does not bar retrial of a defendant when the prior trial was terminated or reversed on the behest of the defendant." *State v. Chase*, 335 N.W.2d 630, 633 (Iowa 1983); *see also State v. Swartz*, 541 N.W.2d 533, 537 (Iowa Ct. App. 1995) ("[T]he Double Jeopardy Clause does not bar retrial of a defendant after a mistrial declared at the defendant's request."). "Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally would not stand in the way of reprosecution." *State v. Hurd*, 496 N.W.2d 274, 276–77 (Iowa Ct. App. 1992).

An exception to the general rule arises if there is prosecutorial misconduct "intended to goad" a motion for mistrial by the defendant. *Swartz*, 541 N.W.2d at 537. A defendant who has made a motion for a mistrial may successfully invoke double jeopardy only where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Hurd*, 496 N.W.2d at 277 (quoting *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982)).

In addition to consent, double jeopardy does not bar the retrial of a defendant if a mistrial was granted based on "manifest necessity to terminate the first trial." *State v. Harrison*, 578 N.W.2d 234, 238 (Iowa 1998). The term "manifest necessity[ ] does not mean absolute necessity," but it does require a "high degree" of necessity. *Id.* "Under the doctrine of manifest necessity, a court has a duty to declare a mistrial when the ends of public justice demand it." *Id.* The State has the burden to establish manifest necessity. *Id.*

Although Miller requested a mistrial, he states that because he asked for a mistrial with prejudice and the court granted a mistrial without prejudice, he did not

consent to the declaration of a mistrial. Miller contends a retrial in this situation is prohibited unless the mistrial was based on manifest necessity, and the State did not establish manifest necessity for the mistrial. Miller asserts the retrial violated his right against double jeopardy.

The record shows defense counsel raised the issue of a mistrial and asked for a mistrial with prejudice. In the alternative, defense counsel requested that if a mistrial with prejudice was not granted, "we just continue this with the same jury panel." Defense counsel noted the logistical problems with the second alternative, as it was unknown when Miller might be prepared to proceed with the trial. The State did not resist the request but asked that if a mistrial was granted, it would be a mistrial with prejudice. Defense counsel then requested that if a mistrial was granted, Miller would have the opportunity to address the issues of prejudice or dismissal of the case later.

Miller raised an alternative argument, asking for a continuance, but noted the logistical problems with this scenario, as he did not know how long it would be before he could continue with the trial. Miller asserted he was unable to continue with the trial on July 12. Additionally, after the district court stated it was inclined to grant the motion for mistrial without prejudice, Miller could have withdrawn his motion for mistrial but did not do so. *See Hurd*, 496 N.W.2d at 277.

In ruling on Miller's motion to dismiss on double jeopardy grounds, the district court stated, "The Motion for Mistrial was granted at the request of counsel." Although Miller did not receive exactly the type of mistrial he requested, we find the first trial "was terminated or reversed on the behest of the defendant." *See Chase*, 335 N.W.2d at 633.

In this appeal, Miller does not claim he requested a mistrial due to provocation by the prosecution. On this basis, we determine the case does not come within the exception to the general rule that arises if there is prosecutorial misconduct "intended to goad" a motion for mistrial by the defendant. *See Swartz*, 541 N.W.2d at 537.

We have already determined Miller requested the declaration of a mistrial. Therefore, we are not required to consider his arguments concerning whether the mistrial was based on manifest necessity.[1] *See Harrison*, 578 N.W.2d at 238 (finding manifest necessity should be considered when a defendant has not consented to a mistrial).

As noted, "[w]here the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial, the Double Jeopardy Clause generally would not stand in the way of reprosecution." *Hurd*, 496 N.W.2d at 276–77. We conclude the retrial of Miller did not violate his right against double jeopardy because he consented to the declaration of a mistrial in this first trial. *See Chase*, 335 N.W.2d at 633.

### III.    Ineffective Assistance

Miller claims he received ineffective assistance because defense counsel did not object to the State's presentation of a video evidencing Miller arguing with

---

[1]Even if we were to consider the doctrine of manifest necessity, we would find the declaration of a mistrial was demanded by the ends of public justice. *See Harrison*, 578 N.W.2d at 238. Defense counsel stated, "[Miller's] in no position to proceed today," and the State did not disagree. Defense counsel also noted the difficulty with continuing the case, stating it could be "three days or two weeks before Mr. Miller is prepared to proceed."

H.S. about a week prior to the incidents giving rise to the criminal charges.[2] Miller asserts the video was inadmissible under Iowa Rule of Evidence 5.404(b), as evidence of prior bad acts. He states the evidence was unduly prejudicial because it reflected adversely on his character.

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

Iowa Rule of Evidence 5.404(b)(1) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The evidence may be admissible, however, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

In determining whether evidence is admissible under rule 5.404(b), we consider the following three-step analysis:

> (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts";

---

[2] The State contends that claims of ineffective assistance of counsel may no longer be considered in a direct appeal, based on amended section 814.7 (2020). The Iowa Supreme Court has determined this statutory provision became effective on July 1, 2019, and does not apply retroactively. *State v. Macke*, 933 N.W.2d 226, 231 (Iowa 2019). The recent changes to section 814.7 do not apply in this appeal. Supreme Court precedent binds us.

(2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

State v. Richards, 879 N.W.2d 140, 145 (Iowa 2016) (quoting State v. Sullivan, 679 N.W.2d 19, 25 (Iowa 2004)).

The video was relevant to the issues of motive and intent because it showed Miller was angry with H.S. Miller was in a custody dispute with his ex-wife and she wanted to use evidence of his relationship with H.S. against him, which caused Miller to get angry with H.S. Miller claimed he was acting in self-defense and H.S. was the aggressor. The video was relevant to show Miller attacked H.S. because he was angry with her, not because he was acting in self-defense. Miller did not dispute he was in the video.[3]

We find the first two elements were met and turn to the issue of whether the probative value of the evidence is outweighed by the danger of unfair prejudice. See id. "Unfair prejudice arises when the evidence 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or . . . may cause a jury to base its decision on something other than the established propositions in the case.'" State v. Wilson, 878 N.W.2d 203, 216 (Iowa 2016) (citation omitted). One factor we may consider in determining whether evidence is unfairly prejudicial is to compare the "enormity of the charged and uncharged crimes." State v. Larsen, 512 N.W.2d 803, 808 (Iowa Ct. App. 1993). In the video, Miller yelled and swore at H.S., which we find was not unduly prejudicial in

---

[3] This exhibit is referred to as a video throughout the record. The exhibit contains only audio of the defendant's voice.

comparison to the crime alleged in this case. The State presented evidence to show H.S. was severely beaten and had potentially life-threatening injuries.

We find no breach in failing to object to the admission of video. The probative value of the evidence was not outweighed by the danger of unfair prejudice. *See State v. Duncan*, 710 N.W.2d 34, 40 (Iowa 2006). Defense counsel does not breach an essential duty by failing to file a meritless motion. *See State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014).

Furthermore, even if defense counsel had breached an essential duty, the evidence does not show Miller was prejudiced by counsel's performance. "[P]rejudice exists when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001) (citation omitted). Miller beat H.S. several times, causing her injuries severe enough to create a substantial risk of death. It is not reasonably probable that the exclusion of the video would have led to a different result in the criminal trial. We find Miller has not shown he received ineffective assistance of counsel.

### IV. Pro Se Brief

On May 17, 2019, Miller filed a pro se supplemental brief. The State filed a motion to strike the pro se brief, claiming it did not comply with the rules of appellate procedure and could not be considered under a recent amendment to section 814.6A(1). The Iowa Supreme Court determined the motion to strike should be submitted with the appeal.

Section 814.6A(1) was amended effective July 1, 2019. *See* Iowa Code § 3.7(1); *State v. Draine*, 936 N.W.2d 205, 206 (Iowa 2019). We have determined

a defendant's pro se brief that is filed before the effective date of the legislation may be considered. *See State v. Smith*, No. 18-2052, 2020 WL 376554, at *4 n.1 (Iowa Ct. App. Jan. 23, 2020); *State v. Syperda*, No. 18-1471, 2019 WL 6893791, at *12 (Iowa Ct. App. Dec. 18, 2019). Miller's pro se brief was filed before July 1, 2019, and therefore consideration of the brief is not barred by section 814.6A(1).

Although Miller's pro se supplemental brief does not follow all of the rules of appellate procedure for briefing found in Iowa Rule of Appellate Procedure 6.901, we will consider the merits of the issues he raises. *See In re Estate of DeTar*, 572 N.W.2d 178, 181 (Iowa Ct. App. 1997) (noting that "as a matter of grace" we may consider a pro se brief that does not fully comply with the appellate rules if "we can do so without assuming a partisan rule and undertaking [a party's] research and advocacy").

Miller claims his right to a speedy trial was violated.[4] His claim, however, is based on the assertion the district court improperly granted a mistrial in this case. He contends the court erred by granting a mistrial and because of this his speedy trial rights continued to run. He states the speedy trial deadline expired before the retrial.

We have already determined the district court properly granted a mistrial in his case. The speedy trial deadline resets at the time a mistrial is declared, giving the State ninety days to try a defendant after the mistrial declaration. *State v. Zaehringer*, 306 N.W.2d 792, 794–95 (Iowa 1981); *see also State v. Fisher*, 351

---

[4] Miller also claims the district court erred by denying his motion to dismiss. We have considered the mistrial and double jeopardy issues and do not discuss them further.

N.W.2d 798, 802 (Iowa 1984) (noting the ninety-day period for trying a case would begin with an order for mistrial). The court declared a mistrial on July 12 and the second trial began on August 7, well within the ninety-day period. We find Miller was not denied his right to a speedy trial.

We affirm Miller's convictions for willful injury causing serious injury and domestic abuse assault (strangulation) causing bodily injury.

**AFFIRMED.**