# IN THE COURT OF APPEALS OF IOWA

No. 22-0139
Filed April 12, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL GARRICK DENSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Mark T. Hostager, District Associate Judge.

The defendant appeals his convictions for assault on a peace officer and interference with official acts. **AFFIRMED.**

Stuart Hoover, East Dubuque, Illinois, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Ahlers, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BLANE, Senior Judge.**

Michael Denson was convicted by jury trial of assault on persons in certain occupations causing bodily injury and interference with official acts resulting in bodily injury. He contends there was insufficient evidence he was aware the victims were peace officers performing lawful acts within their authority. He also contends the State violated the motion in limine. Finding no merit in either claim, we affirm.

## I. Facts and Prior Proceedings

Three officers of the Dubuque Drug Task Force—Daniel Kearney, Jeremy Slight, and Chad Leitzen—were conducting surveillance of a hotel where it was reported Denson was located. Denson had an active warrant out for his arrest. The officers were in plain clothes and unmarked vehicles.[1]

As they were watching the hotel, the officers saw Denson leave a room and get into a car with a woman who was later identified as Brandy Williams. Williams got in the driver's seat, and Denson got in the passenger seat. As they were on the hotel's driveway, the three officers stopped the car, boxing it in with their own vehicles.

Kearney and Slight drew their weapons, approached the car from the front, and told the occupants to put up their hands. Williams put her hands up immediately. Kearney called Denson's name, and Denson put his hands up too. Then Denson put his hands down and opened the passenger door. Kearney said, "Keep your hands up." But Denson got out and ran toward the back of the car,

---

[1] The officers were familiar with Denson's appearance and knew his car, so they were able to identify him when he left the hotel room.

where Leitzen was approaching. Kearney watched as Denson "lowered his shoulder and head" and ran right into Leitzen's chest, taking them both down to the ground. Denson got up and started running across the parking lot. Slight ran after Denson yelling "stop, police." The officers chased after, but Denson disappeared. Leitzen had scrapes and bruises on his back, shoulder, and head. Denson was arrested more than two years later.

The State charged him with assault on persons in certain occupations causing bodily injury, in violation of Iowa Code section 708.3A(3) (2019), and interference with official acts resulting in bodily injury, in violation of section 719.1(1)(c). Before trial, Denson moved in limine[2] to prevent any testimony that the officers were members of the drug task force, that any alleged drug offense was being investigated, or that any drugs were found in the vehicle.

The jury found Denson guilty as charged. He appeals.

## II. Analysis

### A. Sufficiency of the Evidence

"We review sufficiency of the evidence claims for correction of errors at law." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdicts are supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact that Denson is guilty beyond a reasonable doubt. *Id.*

To find Denson guilty of interference with official acts resulting in bodily injury, the jury was instructed it needed to find:

---

[2] The State and Denson agreed to exclude several other topics from evidence that are not important here.

1. [Denson] knew Chad Leitzen, Dan Kearney and/or Jeremy Slight were peace officers who were:
　　(a) detaining [Denson], or
　　(b) arresting [Denson], or
　　(c) serving or executing criminal process or an order of the court.
　　It is not necessary that all jurors agree to just (a), just (b) or just (c). It is only necessary that all jurors agree to at least one of these three alternatives.
2. [Denson] knowingly resisted or obstructed Chad Leitzen, Dan Kearney and/or Jeremy Slight in detaining [Denson], arresting [Denson], or serving or executing criminal process or an order of the court.
3. [Denson's] action resulted in bodily injury to Chad Leitzen.

Denson contends there was insufficient evidence for this conviction: "nowhere in the officer's testimony (or anywhere else) is there evidence that [Denson] should have known there was a lawful arrest warrant to detain him. . . . [T]he record does not make clear either occupant [of the car] knew why they had been stopped and drawn upon by officers." He argues "proof of the defendant's knowledge regarding the presence of a law enforcement officer and the knowledge of that officer's execution of a lawful task are requisite elements for the marshalling instructions."

First, although the offense requires proof Denson "knew [the officers] were peace officers," Denson inserts an additional element. The instruction submitted did not require that Denson knew the officers were executing a "*lawful* arrest warrant," nor that they were "executing a *lawful* task." (Emphasis added). Denson failed to request this element, so the jury instruction is the law of the case. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009); *but see Crawford*, 974 N.W.2d at 521 (distinguishing the general rule that jury instructions are law of the case

when the defendant fails to object to the court "failing to fully define a term" and concluding the reviewing court can "apply[] the correct law").

On appeal, Denson cites *State v. Buchanan*, 549 N.W.2d 291, 293 (Iowa 1996), and *State v. Sullivan*, No. 08-0541, 2009 WL 250287, at *2 (Iowa Ct. App. Feb. 4, 2009), as requiring that the defendant know the officer is "acting within the scope of his lawful duty or authority." Neither of those cases expound on what constitutes an officer's lawful duty or authority. But one of the prohibited acts is "knowingly resist[ing] or obstruct[ing] the service or execution . . . of any civil or criminal process[3] or order of any court." Iowa Code § 719.1(1)(a); *see also State v. Legg*, 633 N.W.2d 763, 772 (Iowa 2001) (finding the defendant interfered with the officer's "lawful performance of his duty to issue her a ticket" for a traffic offense). And Denson does not deny the officers were executing a valid warrant.

The State also contends there is no requirement that Denson knew the officers had a lawful arrest warrant. The State cites *State v. Thomas*, which held a defendant cannot resist even an unlawful arrest by one whom they know or have good reason to know is a peace officer. 262 N.W.2d 607, 610–11 (Iowa 1978). So the jury could find Denson guilty if he knew any of the men were peace officers and knew they were doing any one of three things: detaining him, arresting him, or either serving or executing criminal process or an order of the court.[4]

---

[3] "Criminal process" is "[a] ['summons or writ'] (such as an arrest warrant) that issues to compel a person to answer for a crime." *Process*, *Black's Law Dictionary* (11th ed. 2019)

[4] We affirm a guilty verdict if substantial evidence supports any of the theories presented. *See* Iowa Code § 814.28.

We find there was sufficient evidence both that Denson knew the individuals were peace officers and that he knew they were trying to detain him. Although the officers were in unmarked vehicles and plain clothes, two of the cars were flashing emergency lights associated with law enforcement. Slight pulled his car nose-to-nose with Denson's car with red and blue emergency grille lights flashing. Leitzen stopped immediately behind Denson's car with his emergency lights on as well. And Kearney pulled his car up to the driver's side, boxing Denson's car in against the curb and a rock wall. Kearney and Slight were wearing police badges on neck straps and bullet-proof vests. Leitzen was not wearing his badge, but his vest was labeled with a "POLICE" patch in large block print. The officers testified they identified themselves as police officers verbally.

The officers' actions and verbalizations would also convince a juror that Denson understood the officers were trying to detain him. The three officers physically blocked Denson from escaping and communicated verbally and physically that they were stopping him. Kearney testified he walked up to the car with his weapon drawn and pointed at Williams and Denson, identified himself as a police officer, and told the occupants to put their hands up. He estimated he was seven to ten feet away. The driver's side window was down fully, and the passenger window was halfway down. Slight also approached from the front of the vehicle with his weapon drawn, identified himself as a police officer, and told the occupants to put their hands up. He estimated he was a car length away from the vehicle. Both Denson and Williams responded to the requests at first and raised their hands. From outside the vehicle, Kearney testified Denson looked "right at" him as the deputy stood in front of him, pointing his gun. When Denson

ran, he had to do so by bowling over Leitzen with enough force to knock them both down. Leitzen testified he grabbed hold of Denson, but Denson tore himself away. After Denson ran away, Slight yelled after him "police, stop" several times. The officers testified it all happened very quickly. And Leitzen testified, "I definitely think he was trying to get away. . . . [H]e ran directly at me. . . . I was in the way. I was the only thing preventing him from getting away which is why he ran me over."

Although Denson complained at trial about the lack of body cam or dash cam corroboration of the officers' stories, the jury was entitled to credit their accounts and perceptions of Denson's reactions to them. *See State v. Fox*, 810 N.W.2d 888, 891 (Iowa Ct. App. 2011) ("The jury is free to give each piece of evidence the weight it deserves, 'to place credibility where it belongs,' and to accept or reject any witness's testimony." (citation omitted)). There is ample evidence in the record, including the officers' stopping the car, the tangible markers of what the officers were wearing, and Denson's own reactions to the officers' actions and commands, to convince a rational jury beyond a reasonable doubt that Denson knew the officers were peace officers who were trying to detain him. So substantial evidence supports the conviction for interference with official acts.

## B. Motion in Limine

Denson next contends the State breached the motion in limine by letting the officers testify that they were involved with drug investigations and make other

allegedly prejudicial statements.[5]  We review an evidentiary decision for an abuse

of discretion.  *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022).

Generally, a ruling on a motion in limine does not preserve error for

appellate review, unless it was a final ruling.  *Id.* at 620–21.  "Error arises when the

evidence is introduced at trial, not from ruling on the motion in limine."  *Id.* at 621.

After a hearing on Denson's motion, the court said:

> [M]y order on this, and I'm going to take it under advisement, I'm not going to rule right now, but my order is going to be a protective order, all right, on all of this.
> It's not—it's not a final ruling on the admissibility of evidence. It's an order, a protective order that—that would say the State and its witnesses can't bring this up unless you first go to the judge outside the presence of the jury and ask for permission, so it's not a final ruling on evidence that says you can't do this no matter what, it's a ruling that says if you're gonna get into this you can't do it without first getting permission from the judge, and that's why I say a protective order is different than a final ruling on evidence because the judge can hear the arguments during trial.
> If some of the things you're worried about come up it could—the—the defense could lose the protection, they could open the door to something, all right?

---

[5] Denson also contends this was a form of prosecutorial misconduct.  *See State v. Plain*, 898 N.W.2d 801, 818–819 (Iowa 2017) (explaining the standard and scope of review for prosecutorial error and misconduct).  But he did not raise the claim below, so we do not address it.  *See State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011) (finding Krogmann failed to preserve error on a claim of prosecutorial misconduct when at trial he objected to a question only on the basis that the question was argumentative).

Denson also faults the court for not granting a mistrial sua sponte, or on its own motion, based on prosecutorial misconduct.  A sua sponte mistrial should be granted only in the face of "manifest necessity."  *State v. Harrison*, 578 N.W.2d 234, 238–39 (Iowa 1998).  Denson does not cite this standard or explain how the conduct rises to that level, so he waives the argument.  *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of an issue without elaboration or supporting authority fails to preserve a claim for appellate review).  Even if not waived, the alleged violations of the limine order are few and do not reference drug charges or suspicions that Denson was involved with drugs.  So they do not create a manifest necessity for mistrial warranting a sua sponte mistrial.

Again, I'm not—I'm not ruling on this right now, but I guess what I'm saying is my ruling is not a final ruling on evidence. It would be up—it would be up to the attorneys to take it up during the trial if there's further need to do so.

The court's written order said:

[T]he State and its witnesses shall make no reference to any of the law enforcement personnel being members of the Dubuque Drug Task Force or any reference to a drug investigation or the finding of any drugs in this case in the presence of the jury without first approaching the court out of the presence of the jury to seek permission to do so.
The State shall also inform its witnesses of this order in limine prior to their testimony.
As stated on the record, the parties are reminded this order is a protective order and not a final ruling on the admissibility or exclusion of evidence.

Although Denson now asserts the State violated the motion several times through references to the officers being in a "specialized unit," police training that included drug investigation, familiarity with Denson's physical appearance, and statements that Denson had a nickname, he raised no objection during trial.[6] On appeal he asserts he did not have to because the limine ruling was final. But as the court stated repeatedly in its verbal and written rulings, its decision on the motion in limine was not final and it intended to rule during testimony on a case-by-case basis. Even if the limine motion was sustained, that ruling "excludes reference or introduction of this evidence until its admissibility is determined by the trial court, outside the presence of the jury, in an offer of proof." *Id.* (citation

---

[6] The State carefully phrased questions that elicited answers to avoid violation of the limine order. The State walked an evidentiary tight rope of proving the officers in plain-clothes were identifiable as peace officers with knowledge of Denson's identity because of his prior criminal activity without disclosing the drug nature of that activity.

omitted).  Denson still had to object at trial.  He did not preserve his claims for review.

**AFFIRMED.**